Sarah THOMAS and Janet Thomas Meek, Plaintiffs,

v.

William D. STAATS, Superintendent of Schools, Board of Education of the County of Wood; Board of Education of the County of Wood; Roy Truby, State Superintendent of Schools; and West Virginia Board of Education, Defendants.

Civ. A. No. 83–A094.

United States District Court, S.D. West Virginia, Parkersburg Division.

Dec. 19, 1985.

William F. Byrne, Morgantown, W.Va., for plaintiffs.

Fred L. Davis, Jr., Howard E. Seufer, Jr., Davis, Bailey, Pfalzgraf & Hall, Parkersburg, W.Va., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

This is an action under the Education for All Handicapped Children's Act of 1975 (EAHCA). Pending before the Court is the Defendants' motion for summary judgment. As ground for their motion, the Defendants claim that the Plaintiffs' action was untimely brought, i.e., that it falls outside the period of limitations applicable to this type of action.

### I. *Background*

Janet Thomas Meek instituted this action on behalf of her daughter, Sarah Thomas. Sarah, who was twenty years of age at the time suit was filed, is mentally retarded, speech impaired and emotionally disturbed. She also suffers from petit mal seizures. In 1969 Sarah was enrolled in a private school, the Institute of Logopedics, in Wichita, Kansas. For several years her parents bore the cost of her education. After the effective date of the EAHCA, however, the Board of Education of Wood County, West Virginia, (the Board) assumed responsibility for the bulk of her educational and residential expenses. This arrangement was under a finding that such a placement constituted the appropriate public education for Sarah. Providing a "free appropriate public education" is the preeminent purpose of the EAHCA. 20 U.S.C. § 1412(1); *Hendrick Hudson District Board of Education v. Rowley*, 458 U.S. 176, 180–81, 102 S.Ct. 3034, 3037–38, 73 L.Ed.2d 690 (1982).

Sarah continues to reside at the Kansas school. In 1980, however, the Board determined that Sarah, then eighteen years of age, could be appropriately educated in the public schools of Wood County and should no longer be educated at the private school in Kansas. Sarah's mother, Mrs. Meek, objected to this change of placement and on June 11, 1981, requested, as was her right under the EAHCA, an administrative due process hearing.

A hearing was held on February 19, 1982, and on April 8, 1982, the hearing examiner issued a decision affirming the Board's decision to change Sarah's placement from Kansas to West Virginia. On May 4, 1982, Mrs. Meek filed a notice of administrative appeal with the West Virginia Board of Education (State Board). The State Board's July 9, 1982, decision affirmed the local Board's decision to change Sarah's placement. Mrs. Meek then filed the instant civil action on July 7, 1983.

### II. *Discussion*

The Defendants contend that the Plaintiff's action is barred by the applicable limitations period. Naturally, the Plaintiffs disagree. Consequently, the parties have advanced competing time periods. They are able to do so because, unlike other causes of action, the period of limitations for bringing suit under the EAHCA is not precisely defined. In fact, the EAHCA is silent on the matter. Ascertaining the proper period requires interpolation of state and federal law.

### A. *The Act*

Seeing a need for greater efforts to be made in educating handicapped children,

Congress in 1975 enacted the Education for All Handicapped Children's Act of 1975. The EAHCA is similar to many federal programs. Instead of relying on federal institutions and federal employees to carry out its purposes, the EAHCA sets standards and guidelines for state and local agencies to follow. If the state and local agencies—school boards for the most part—agree to adhere to the federal standards, they receive the necessary funding from the federal government to provide educational services to handicapped children. The responsibility for actually educating the children, therefore, falls upon the state educational apparatus already in place. Compliance is assured by the provisions allowing for withholding of federal funds when the requirements of the EACHA are not satisfied by the participating state or local agency.

Another measure contained in the EAHCA to encourage compliance is the provision for judicial review. On this subject, the EAHCA sets forth a series of procedural safeguards. 20 U.S.C. § 1415. Parents of handicapped children are given access to the education records of their children. They are to receive notice of any action planned to be taken by the agency. They are entitled to notice of their rights under Section 1415. Parents are allowed to present complaints concerning the children's education. Most importantly, upon the complaint of a parent, a due process hearing is to be held by the agency before an impartial party. At the hearing, the parents or other party have the right to counsel, the right to be accompanied by persons with special knowledge of education for handicapped children, the right to present evidence and cross-examine witnesses, the right to a written record and the right to written findings of fact and decisions. The parent or other party aggrieved by the result of the due process hearing may appeal to the state educational agency which will conduct an impartial review of such hearing. If a party is still unsatisfied with the result after the state review, Subsection (e)(2) of Section 1415 gives parents the right to bring a civil action in either state or federal court to challenge the state administrative ruling. The Court has the authority to hear additional evidence as well as to review the administrative records. Basing its decision on a preponderance of the evidence, the Court is to grant such relief as it deems appropriate.

Absent from Section 1415's detailed procedural safeguards is a limitations period for bringing the civil action given as a matter of right in Section 1415(e)(2). The absence of a limitation period in a federal statutory scheme is not uncommon.[1] The federal courts are in consensus that such an omission requires the federal court to borrow a period from state law which governs an analogous cause of action.[2]

### B. Borrowing From State Law

1. *Possible State Law Periods.* The applicable limitations period, assert the De-

**1.** See *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The borrowing of a state limitations period for federal causes of action is not based on the Rules of Decision Act or the *Erie* doctrine. *Holmberg v. Armbrecht,* 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946). Rather, absent express consideration of the problem of limitations periods, the borrowing has been termed "a matter of interstitial fashioning of remedial details." *DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 160, n. 13, 103 S.Ct. 2281, 2287, n. 13, 76 L.Ed.2d 476 (1980). "In such cases, the general preference for borrowing state limitations periods could more aptly be called a sort of fall back rule of thumb than a matter of ascertaining legislative intent; it rests on the assumption that, absent some sound reason to do otherwise, Congress would likely intend that the courts follow their previous practice of borrowing state provisions." *Id.* 462 U.S. at 158, n. 12, 103 S.Ct. at 2287, n. 12.

**2.** *Board of Regents v. Tomanio,* 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *McNutt v. Duke Precision Dental and Orthodontic Lab,* 698 F.2d 676 (4th Cir.1983); *Department of Education, State of Hawaii v. Carl D.,* 695 F.2d 1154 (9th Cir.1983).

fendants, is four months.[3] They derived this period from a limitations period applied to West Virginia's peculiar writ of certiorari. The Plaintiffs, on the other hand, contend that the more correct period is one year. The Plaintiffs would have the Court adopt this period under the authority of *W.Va.Code,* § 55–2–12 (1966). That statute, in part, supplies a one year limitations period for personal actions "for which no limitation is otherwise prescribed."[4] The parties are in agreement that another possible period, the thirty-day period provided under the West Virginia Administrative Procedures Act,[5] is inapplicable by its terms to the state Board of Education. Therefore, the choice before the Court would appear to be between the 120-day and one-year periods. The consequences flowing from a decision are obvious.

2. *The Methodology of Other Courts.* In reviewing the actions of courts from other circuits, the Court does not seek a consensus on the appropriate limitations period. Because the courts rest in different states, the length of the periods selected will naturally be different.[6] Rather, the Court examines the analysis by which these courts borrow from the state law.

Finding the appropriate state limitations period was a problem faced by the Court in *Monahan v. State of Nebraska,* 491 F.Supp. 1074 (D.Neb.1980), *affirmed in part, vacated in part on other grounds,* 645 F.2d 592 (8th Cir.1981). The Defendants in *Monahan* proposed to the court a thirty-day period borrowed from Nebraska's administrative procedures law. This period was proposed because it governed suits filed to review orders of the Commissioner of Education following a due process hearing. In passing on the appropriateness of the thirty-day limitations period, the Court first noted that the federal

3. The Defendants and the West Virginia Supreme Court use the term "four months" in discussing the length of the limitations period for a writ of certiorari. Such useage is traceable to the West Virginia statutes which contain analogous limitation periods cast in terms of "four months." In referring to the limitations question at hand, however, this Court prefers to use the more precise designation of "120 days," based on the assumption that a month is generally thought of as containing thirty days.

4. *W.Va. Code,* § 55–2–12 (1966), provides in full as follows:

"Every personal action for which no limitation is otherwise prescribed shall be brought: (a) within two years next after the right to bring the same shall have accrued, if it be for damage to property; (b) within two years next after the right to bring the same shall have accrued if it be for damages for personal injuries; and (c) within one year next after the right to bring the same shall have accrued if it be forany other matter of such nature that, in case a party die, it could not have been brought at commonl law by or against his personal representative."

5. *W.Va. Code,* § 29A–1–3 (Supp.1985), provides, in pertinent part, as follows:

"(b) Except as to requirements for filing in the state register, and with the legislature or its rulemaking review committee, provided in this chapter or other law, the provisions of this chapter do not apply in any respect whatever to the West Virginia Board of Probation and Parole, the Public Service Commission, the Board of Education and the West Virginia Board of Regents: Provided, that rules of such agencies shall be filed in the state register in the form prescribed by this chapter and be effective no sooner than sixty consecutive days after being so filed: Provided, however, that such agencies may promulgate emergency rules in conformity with section 15, article 3 of this chapter."

6. The cases have already rendered a disparity of time periods ranging from thirty days in *Carl D.,* 695 F.2d 1154, to three years in *Sanders by Sanders v. Marquette Public Schools,* 561 F.Supp. 1361 (W.D. Mich.1983). Hence, any argument for national uniformity would appear to be subject to a fait accompli by the several precedents in the area. Moreover, if Congress had wanted to have a national statute of limitations, it could have imposed one easily. Of course, some zones of federal legislation have been found to necessitate a uniform period even in spite of congressional silence. *See DelCostello v. International Brotherhood of Teamsters,* 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (six-month limitations period must pertain for suit against employer for breach of collective-bargaining agreement and against union for breach of duty of fair representation); *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977) (EEOC not bound by any state limitations period). With so much of the responsibility for educating children falling upon the states, the Court discerns no federal policy in establishing a uniform limitations period.

courts had "not developed a uniform analytical approach for determining the most analogous state statute of limitations." *Id.* at 1083. Nevertheless, from its review of the case law, the court was able to fashion a two-factor approach in selecting an appropriate state limitations period. First, according to the Court, "a determination is made as to whether the allegations constituting the plaintiff's federal claim state a cause of action under state law." *Id.* at 1084. Second, if a state cause of action is stated, the "issue is whether the state judicial proceedings available to a plaintiff asserting the state cause of action are equivalent to the federal judicial proceedings available to a plaintiff asserting the federal claim." *Id.*

Applying the above framework, the *Monahan* court assumed that the plaintiffs before it could also state a claim under Nebraska law; however, it did not find the proceedings governed by the thirty-day limitations period to be equivalent to those guaranteed under Section 1415 of the EAHCA. Principally, the Nebraska procedure, argued to be analogous to the federal procedure, did not give the reviewing court the authority to make an independent factual determination based on the administrative record; a court was limited to determining whether the agency decision was based on substantial evidence or was arbitrary and capricious. *Id.* at 1084. The court properly noted that a Section 1415(e) court is empowered to hear evidence not found in the administrative record. The court deemed the Section 1415(e) proceeding to be in the nature of a trial *de novo*, whereas the state proceeding was one of limited review. Accordingly, the court rejected the thirty-day period. Unlike the instant case, the parties had not suggested an alternative period. The court, however, took notice of two other state limitations periods, under either of which the Plaintiffs' suit could be deemed timely.

The *Monahan* case was distinguished by the Ninth Circuit in *Department of Education, State of Hawaii v. Carl D.* 695 F.2d 1154 (9th Cir.1983). The issue and circumstances were much the same as in *Monahan.* The State of Hawaii had a thirty-day limitations period which applied to the judicial review of a decision made by its Department of Education. This period was advanced as the appropriate period to be borrowed by a federal court in deciding whether a Section 1415 suit had been timely filed. The analytical approach adopted in *Carl D.* was similar to that used by the *Monahan* court. Noting that it should borrow a period from an analogous state statute, the *Carl D.* court, like the court in *Monahan,* proceeded to "look to the whether the scope of judicial proceedings available to a plaintiff under the state act is similar to the review available under Section 1415(e)(2) of the EAHCA." *Id.* at 1157. The court distinguished the result reached in *Monahan* under this second factor of the borrowing analysis. The basis of its distinction lie in the difference between Hawaii and Nebraska's administrative procedures. Whereas Nebraska's state procedure allowed only for a limited judicial review of an administrative ruling, the Hawaii counterpart allowed the introduction of new evidence at the judicial level; a provision similar to the federal scheme found in Section 1415. Indeed, the Ninth Circuit noted that the standard of review under the Hawaii provision might be broader than that of Section 1415. Therefore, the thirty-day limitations period was found appropriate for use by the federal court sitting in Hawaii, and the review requested by the state agency was denied.

In *Tokarcik v. Forest Hills School District,* 665 F.2d 443 (3d Cir.1981), *cert. denied,* 458 U.S. 1121, 102 S.Ct. 3508, 73 L.Ed.2d 1383 (1982), a court again was called upon to adopt a thirty-day limitations period for suits brought under Section 1415(e). In a carefully written opinion, the Third Circuit declined to accept such a truncated period. The court emphasized two points which influenced its decision. First, it noted that the state statute containing the thirty-day limitations period was similar to the one in *Monahan* in that it limited judicial review to an examination of the record. Second, the court went to great

lengths to demonstrate that the thirty-day period was, in any event, incompatible with the federal objectives reflected in the EAHCA. The parties, said the court, need more time to investigate and prepare, especially since additional evidence can be presented to the reviewing court. Taking note of the independent nature of such review, the court found that "[a] limited appeals period which functions to restrict the range of evidence and issues that reviewing courts could consider would effectively dilute the independent position of the district courts envisioned by Congress." *Id.* at 451. The court further opined that switching from the state system to the federal system would necessitate a longer limitations period. Basically, though, the *Tokarcik* court found thirty days to be just too brief a period for parents to evaluate and appeal the decision of the state administrative agency effectively. In this vein, the court noted that, "[f]requently, systemic deficiencies or placement problems will surface only with the passage of time." *Id.* at 452. Hence, the *Tokarcik* court favored a longer limitations period than the thirty days advocated by the defendant school district. It did not have to choose between a two-year and six-year period advanced by the parents since either would allow the suit, but the court expressed a preference for the two-year period.

A recent decision on the statute of limitations problem raised by a suit under the EAHCA is *Scokin v. State of Texas*, 723 F.2d 432 (5th Cir.1984). In *Scokin*, the court approached the problem under the two-step process set out in *Monahan:* determine the limitations period for an analogous state cause of action and then determine whether applying the state period would be consistent with the underlying policy of the federal act. The court first noted that the most analogous state cause of action would appear to be an appeal from a state agency to a state court. Nevertheless, the *Scokin* court was unwilling to apply the thirty-day period applicable to state agency appeals. It was aware that the *Monahan* court and, to a lesser extent, the *Tokarcik* court, had based their deci-

sions rejecting thirty-day periods on procedural differences between state agency appeals and EAHCA actions. The *Scokin* court chose to go a somewhat different route:

"In rejecting the Texas thirty-day statute as the appropriate analogue, we do not rely on procedural differences to distinguish an EAHCA action from the appeals governed by [the state statute]. Instead, we base our holding on our belief that a thirty-day limitation period is inconsistent with the purposes of the EAHCA."

*Id.* at 437–38.

The freshest case on the instant question comes from the Second Circuit. In *Adler by Adler v. Education Department of State of New York*, 760 F.2d 454 (2d Cir. 1985), the court affirmed the district court's decision that a four-month limitations period could be drafted from an analogous state cause of action. In *Adler*, the parents of a handicapped child brought an action for reimbursement of expenses based on an otherwise favorable administrative decision. The parents initiated the action fifteen months after the administrative ruling; they argued for a three-year limitations period. The district court, however applied a four-month limitation period based upon a state statute which authorized review of administrative decisions involving handicapped children. The Second Circuit affirmed the district court's decision notwithstanding its acknowledgement that the state action differed from a Section 1415(e) suit in three significant respects: "the evidence before the reviewing court, the standard of review, and the type of relief afforded the reviewing court." *Id.* at 457. In disregarding these differences, the court declared that the state action need not "mirror" the federal action. *Id.* (*citing Wilson v. Garcia*, — U.S. —, —, 105 S.Ct. 1938, 1945, 85 L.Ed.2d 254 (1985)).

The *Adler* court distinguished the decisions in *Monahan, Flavin* and *Tokarcik* on two counts. First, it noted that the state law before those courts confined the reviewing court's inquiry to the administra-

tive record. Conversely, under the New York law in *Adler,* the reviewing court could remand to the administrative body for consideration of newly available evidence. Second, the *Adler* court pointed out that the limitations period proposed as a bar to the *Monahan, Flavin* and *Tokarcik* courts ranged from thirty to forty-five days. The court agreed with those courts that such short periods were inconsistent with the purposes of the EAHCA, but found no such shortcoming with the longer four-month period. Indeed, the *Adler* court saw the four-month limitations period, contrasted with a three-year limitations period, as supporting policy considerations underlying the EAHCA—namely, prompt resolution of a child's educational needs. Moreover, the court rejected the concerns of the plaintiffs that four months was insufficient time to prepare their case. The court found it to be ample time.

A review of the above decisions [7] reflects a prevailing concern over whether the targeted state cause of action allows proceedings analagous to those contemplated under the EAHCA. As one district court has put it:

"In order to determine the most analagous state statute of limitations, the court must consider the essential nature of the federal claim and whether the state judicial proceedings available under the analogous state cause of action are equivalent to the federal judicial proceedings available under the federal cause of action." [cites omitted].

*Flavin v. Connecticut State Board of Education,* 553 F.Supp. 827, 831 (D.Conn. 1982). With this in mind, the Court now turns to the writ of certiorari which is available under West Virginia law.

3. *West Virginia's Writ of Certiorari.* The writ of certiorari available in West Virginia has its origin in the West Virginia Constitution, which provides that a "Circuit Court shall have the supervision and control of all proceedings before justices and other inferior tribunals, by mandamus, prohibition and certiorari." West Virginia Constitution, Article VIII, § 12. This organic law is mirrored by *W.Va. Code,* § 53–3–2, which provides, in pertinent part, as follows:

"[I]n every case, matter or proceeding before a county court ... or other inferior tribunal, the record or proceeding may, after a judgment or final order therein, ... be removed by a writ of certiorari to the Circuit Court of the county in which such judgment was rendered or order made:...."

The constitutional and statutory authority has led the West Virginia Supreme Court to conclude that "a writ of certiorari is a proper procedure for testing the findings of an inferior tribunal." *Beverlin v. Board of Education of Lewis County,* 158 W.Va. 1067, 1070, 216 S.E.2d 554, 556 (1975).[8] The *Beverlin* court approved the procedure by which a school teacher applied for a writ of certiorari in a circuit court to address his dismissal by a county board of education. The State Supreme Court has also held that the proper method to receive judicial review of a state superintendent of schools decision is by writ of certiorari to a state circuit court. *Board of Education, Lincoln County v. MacQueen,* 325 S.E.2d 355 (W.Va.1984); *Leef v. Via,* 293 S.E.2d 442 (W.Va.1982), *overruled in part on other grounds, MacQueen.* The procedure is not limited to disgruntled individuals; a county board of education may also apply for a writ of certiorari to challenge a decision by the state superintendent of schools. *Mason County Board of Education v. State Superintendent of*

---

**7.** For other decisions discussing the limitations problem inherent in a Section 1415(e) action, *see Sanders by Sanders v. Marquette Public Schools,* 561 F.Supp. 1361 (D.Mich.1983); *Flavin v. Connecticut State Board of Education,* 553 F.Supp. 827 (D.Conn.1982).

**8.** The writ of certiorari is especially appropriate for judicial review of decisions made by a state agency, such as the state Board of Education, not covered by the Administrative Procedures Act. *State ex rel Ginsberg v. Watt,* 285 S.E.2d 367 (W.Va. 1981); *Mason County Board of Education v. State Superintendent of Schools,* 160 W.Va. 348, 234 S.E.2d 321 (1977).

*Schools,* 160 W.Va. 348, 234 S.E.2d 321 (1977). Although school personnel matters appear to be the most frequent type of dispute to take the certiorari route to circuit court, *see Leef v. Via,* 293 S.E.2d 442, 444 (W.Va.1982), the writ is by no means limited to such disputes. *See Harrison v. Ginsberg,* 286 S.E.2d 276 (W.Va.1982) (writ of certiorari used to review decision of Department of Welfare to deny benefits under the Aid to Families With Dependent Children Program); *North v. West Virginia Board of Regents,* 160 W.Va. 248, 233 S.E.2d 411 (1977) (writ of certiorari used to review decision of Board of Regents and university president to expel medical student).

The Plaintiffs point out that the writ of certiorari is a discretionary writ. In other words, a circuit court has the discretion on whether to deny the application or petition summarily. While this observation may be technically true, recent decisions of the West Virginia Supreme Court appear as a practical matter to retard any element of discretion. The Court has emphasized the liberality of the writ. *Harrison v. Ginsberg,* 286 S.E.2d 276, 282 (W.Va. 1982); *North v. West Virginia Board of Regents,* 160 W.Va. 248, 259, 233 S.E.2d 411, 418 (1977). Under the present state case law, a circuit court would appear to have no greater latitude to deny a petition for writ of certiorari than a federal court does in granting summary judgment or in dismissing a case for failure to state a claim.

It will be recalled that the district court in *Monahan* rejected a state law administrative appeals period because under state law the reviewing court was limited to the boundaries of the record developed in the inferior tribunal; the court's role was merely to determine if the administrative decision maker had acted arbitrarily and capriciously. The controlling statute for the West Virginia writ of certiorari is vague on the standard of review for a circuit court. *W.Va. Code,* § 53–3–3 (1966), provides, in pertinent part that a "circuit court shall ... review such judgment, order or proceeding, of the county court, council, justice or other inferior tribunal upon the merits, determine all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter as law and justice may require." The West Virginia Supreme Court has interpreted this language in two significant respects. First, it has held that a circuit court on certiorari is authorized to take evidence independent of that contained in the record of the lower tribunal. *North,* 233 S.E.2d at 419. Second, the Court has rejected the narrow arbitrary and capricious standard of review traditionally applied by courts in examining the ruling of an administrative body. *Harrison,* 286 S.E.2d at 283.

The Court finds these interpretive decisions by the West Virginia Supreme Court to align the writ of certiorari very close in form and function to the federal procedure spelled out in Section 1415(e). That this is so can be seen in comparing the concerns of the Third Circuit in *Tokarcik* with the recently developed contours of the West Virginia writ of certiorari. In rejecting a state limitations statute controlling administrative appeals to state courts as an inappropriate analogue to borrow, the *Tokarcik* court noted that under Section 1415(e) a "reviewing court may hear evidence not contained in the administrative record and must reach an independent decision based on a preponderance of the evidence." *Tokarcik,* 665 F.2d at 450. As delineated above, these elements are shared by the writ of certiorari. The *Tokarcik* court emphasized that Section 1415(e) "permits a court to 'grant such relief as the court determines is appropriate,' a far broader remedial power than is customarily conferred on judicial bodies reviewing agency decisions." *Id.* If Section 1415(e) is an exception to the custom in this regard, then so is the pertinent statute controlling the West Virginia writ of certiorari; it provides that the reviewing court "shall ... render such judgment or make such order upon the whole matter as law and justice may require." *W.Va. Code,* § 53–3–3 (1966). Finally, the *Tokarcik* court concluded that "Congress clearly contemplated more than

the customary appeal from an administrative decision." *Tokarcik,* 665 F.2d at 450. In like manner, the writ of certiorari has come to represent more than a "customary appeal." *See Harrison,* 286 S.E.2d at 276.

The Plaintiff argues that the writ of certiorari should not be used as an analogue because the action provided for in Section 1415(e) is more akin to a civil action than an appeal from an administrative decision. In this vein, the *Tokarcik* court points out that the legislative history of the EAHCA "specifically indicates that the House bill's provision for appeals from the determinations of the state educational agency was dropped and replaced with a conference substitute creating a right to bring a civil action—the present statutory language." *Tokarcik,* 665 F.2d at 448. Be that as it may, any idea that the action under Section 1415(e) is a pure civil action must be tempered by the Supreme Court's rejection of the broad power of courts to review and upset the placement decisions of local education officials. The Court, in *Hendrick Hudson Board of Education v. Rowley,* 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), has addressed the role of a reviewing court in the following terms:

> "Thus the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review. The very importance which Congress has attached to compliance with certain procedures in the preparation of an IEP [Individualized Educational Program] would be frustrated if a court were permitted simply to set state decisions at naught. The fact that § 1415(e) requires that the reviewing court 'receive the records of the [state's] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings."

*Id.* 458 U.S. at 206, 102 S.Ct. at 3051, *quoted in Roncker on behalf of Roncker v. Walter,* 700 F.2d 1058, 1061–62 (6th Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 196, 78 L.Ed.2d 171 (1983). This advisory from the Supreme Court, together with the latitude enjoyed by a certiorari court, convinces the Court that the writ of certiorari procedure should not be rejected as a state analogue merely because the words "civil action" are employed by Section 1415(e). Any difference is one of semantics only.

■ These observations of the striking similarities between the type of proceeding mandated by Section 1415(e) and that available under the writ of certiorari does not end this Court's inquiry. Indeed, the purpose of comparing the state and federal mechanisms is to determine whether the state limitations period may be applied to the federal cause of action. It can be hypothesized that the more similar the state proceeding is in function and scope to the federal proceeding, the more likely the state period will conform to the practical needs of the federal cause of action. Nevertheless, a federal court cannot rely with blind faith on a similar state action to supply an apt period. As the Supreme Court noted in *Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), "[s]tate legislatures do not devise their limitations periods with national interests in mind." *Id.* 432 U.S. at 367, 97 S.Ct. at 2455. Hence, the Court must make a determination that the length of the limitations period, in and of itself, does not "frustrate or interfere with the implementation of national policies." *Id.*

■ Recent case law in West Virginia has set the limitations period for a writ of certiorari at 120 days. *Leef v. Via,* 293 S.E.2d 442 (W.Va. 1982), *overruled in part on other grounds, MacQueen,* 325 S.E.2d 355 (W.Va. 1984); *State ex rel Gibson v. Pizzino,* 164 W.Va. 749, 266 S.E.2d 122 (1979). Ironically, this period had to be set by the West Virginia Supreme Court because the statute authorizing the writ does not itself provide for a period of limitations. Hence, the *Pizzino* court was placed in the posture of borrowing an analagous period from other state statutes. It reasoned that an analogy could be made to the

time periods for appealing to circuit court from a county court, *W.Va. Code,* § 58–3–4, or a court of limited jurisdiction. *W.Va. Code,* § 58–4–4. Since in both instances the time period mentioned was 120 days,[9] the court found that period as the appropriate one for filing a writ of certiorari. In another ironic twist, the *Pizzino* court was asked on rehearing to consider the thirty-day period prescribed in the Administrative Procedures Act, *W.Va. Code,* § 29A–5–4(b) (1980), as the more analogous statute from which to borrow. The court refused to borrow the suggestion.

> "We decline to make this analogy, since we are of the view that the issues involved in this type of case may be considerably more complex than in the normal administrative procedure case and, as a consequence, preparation of the record may make it impossible to meet a thirty-day time period."

*Id.* at 754, 266 S.E.2d at 125.

The Court has discovered only one other case wherein a period comparable to 120 days has been considered for a Section 1415(e) suit. *See Adler,* 760 F.2d 454. Most of the courts have been faced with choosing between a thirty-day period and a one or two year period. With one exception, *Carl D.,* 695 F.2d 1154, the courts have rejected the thirty-day limitations period for the federal action. *See, e.g., Scokin,* 723 F.2d 432; *Tokarcik,* 665 F.2d 443. The *Scokin* and *Tokarcik* courts found the thirty-day period to be inconsistent with the goals of the EAHCA. Such goals included parental involvement and the general education needs of the handicapped child. Thirty days was believed to be just too short a period for a parent to decide the emotional issue of whether the best result had been reached for his or her child. Obviously, the equitable points directed against the thirty-day limit are diluted somewhat by the fact that the period advocated in this case is 120 days. All things considered, this Court is of the view that a 120-day limitations period will not impair any of the concerns articulated by the *Scokin* and *Tokarcik* courts. It must be kept in mind that by the time the parties have reached the point of considering judicial action, the matter will have already been litigated twice. *See, Adler,* 760 F.2d at 457. The parties do not necessarily have to prepare for trial during the 120 days allowed; they must only decide whether to continue their litigation efforts.[10]

## C. *Equitable Considerations*

The Plaintiffs urge the Court not to apply the 120-day limitation period to them even if such period is found to be generally appropriate. They claim to have good cause for not filing this action sooner than they did. By way of affidavit and memorandum, the Plaintiffs have listed a chronology of facts in support of their contention. The record reflects that the Plaintiffs' attorney, who represented them during the administrative proceedings, suffered a serious heart attack in May of 1982. The state Board of Education soon thereafter, July 9, 1982, issued the second and final administrative decision. With that decision, the period of limitations began to run. The Plaintiffs' attorney did not return to practice until September, 1982, with directions to sharply curtail his law practice. He began searching for another lawyer to assume this case, and the Plaintiffs' present attorney accepted the case in April of 1983. This action was filed on July 7, 1983.

The Defendants argue that even if the first attorney's illness tolled the running of the limitations period, it did not toll it for a sufficient amount of time between July 9, 1982, and July 7, 1983, to bring the filing of the case within the 120-day limitations period. They contend that in any event there are no provisions under West Virginia law for tolling statute of limita-

9. The statutes actually say "four months." *See* n. 3.

10. The Court's selection of the writ of certiorari as the analogous state procedure eliminates any need to discuss the alternative one-year limitation period.

tions because of the illness or neglect of an attorney. They further contend that a federal court must borrow the tolling rules of the state from which it borrows the limitations period. The Court agrees generally with the Defendants' assessment of the law. A federal court must take the state's tolling rules with the underlying limitations period. *Board of Regents v. Tomanio*, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Furthermore, this Court has found no provision under the West Virginia tolling rules for attorney illness or neglect. *See Arlan's Department Store v. Conaty*, 162 W.Va. 893, 253 S.E.2d 522 (1979); *Nibert v. Carroll Trucking Co.*, 139 W.Va. 583, 82 S.E.2d 445 (1954); *White Sulphur Springs, Inc. v. Jarrett*, 124 W.Va. 486, 20 S.E.2d 794 (1942). In spite of the foregoing, this Court does not feel bound to deny these Plaintiffs their day in Court. There are equitable considerations involved here.[11]

It was the Third Circuit in *Tokarcik* which declared that "resort to state statutes was not to be mechanical, in disregard of the import of local laws on federal objectives." *Tokarcik*, 665 F.2d at 448. While the Court concludes that a 120-day limitation period is appropriate for Section 1415(e) suits generally, it also believes that such an application here would work an injustice and fly in the face of federal objectives.

Section 1415 is replete with procedural safeguards for the parents of handicapped children. Such was the emphasis of the section on procedure that the Supreme Court found it to demonstrate "the legislative conviction that adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content." *Hendrick Hudson District*

*Board of Education v. Rowley*, 458 U.S. 176, 206, 102 S.Ct. 3034, 3050, 73 L.Ed.2d 690 (1982). Basic to the federal act is the requirement that the parents of the child be informed of the procedures available. 20 U.S.C. § 1415(b)(1)(D); *see also* Regulations for the Education of Exceptional Students, West Virginia Department of Education, 3.1 D 1 a (1983). Although the mother of Sarah Thomas otherwise appears to have been adequately informed of her procedural rights, she was obviously not told how much time she had to file suit. Indeed, it is unlikely that someone in authority could have so informed her. This is a case of first impression in West Virginia. It is one thing to conclude that someone filing a writ of certiorari in state court would have notice of the 120-day limitations period set by state case law; it is another thing to conclude that a plaintiff in federal court confronted with a speculative and untried borrowing analysis would have notice. On the subject of notice, the *Scokin* court, coming out of the Fifth Circuit, is worthy of consideration. The *Scokin* court found, in the requirement that educational agencies inform parents of all available procedures, "a duty to inform parents of the limitations period for judicial review." *Scokin*, 723 F.2d at 438.

For the foregoing reasons, the Court must conclude that to engage in what one court has called a "post hoc application of a nonobvious time bar," *Tokarcik*, 665 F.2d at 454, would in this instance frustrate the federal policy, embodied in the EAHCA by a procedure-conscious Congress, of protecting the rights of handicapped children to an appropriate education.

### III. *Conclusion*

The Court thus concludes that a 120-day limitations period is appropriate for actions brought in West Virginia federal courts pursuant to 20 U.S.C. § 1415(e). Nevertheless, the Court will not deny these Plain-

---

11. The courts have been sensitive to the equitable treatment of parents in applying limitation periods. In *Carl D.*, the Ninth Circuit, though applying a thirty-day limitations period against a state educational agency seeking judicial review, stated that equitable considerations might militate against applying such a limitation against unrepresented parents. The *Scokin* court also implied that it could apply equitable principles to relieve uninformed parents; however, in that case it chose instead to apply a longer period.

tiffs their day in Court by retroactively applying this legal precedent. Accordingly, the Defendants' motion for summary judgment is denied. There are other matters pending before the Court which will be addressed in a separate order.