ROBIN HARRISON

*v.*

LEON H. GINSBERG, COMMISSIONER,

WEST VIRGINIA DEPARTMENT OF WELFARE,

IN HIS OFFICIAL CAPACITY;

JAMES F. BRAGG, STATE HEARING OFFICER,

MEMBER BOARD OF REVIEW

OF THE

WEST VIRGINIA DEPARTMENT OF WELFARE,

IN HIS OFFICIAL CAPACITY

(No. 15349)

Decided January 22, 1982.

*Heidi Weintraub,* for appellant.

*Chauncey H. Browning* Attorney General and *Billie Gray, Assistant Attorney General,* for appellees.

McGRAW, JUSTICE:

This case is here on an appeal from a decision of the Circuit Court of Kanawha County that affirmed an administrative decision of the West Virginia Department of Welfare finding the appellant ineligible for benefits under the Aid to Families with Dependent Children program. The Department of Welfare's decision denying appellant benefits was based on its finding that the appellant did not qualify under the department of Welfare's definition of "incapacity." The circuit court held that the Department of Welfare's decision was not arbitrary, capricious, or contrary to the law and evidence, and affirmed the administrative decision. The appellant contends the circuit court's decision is in error because: (1) the state hearing officer failed to consider the appellant's vocational history and other relevant factors in determining incapacity as required by state and federal law; (2) the evidence conclusively established that the appellant met the applicable federal standard of incapacity; and (3) the circuit court applied an incorrect standard of review. We agree with the appellant's first and last contentions and reverse.

The appellant, Robin Harrison, is a 26 year old male, married, with one child. He suffers from fibrous dysplasia, a disease where healthy bone is replaced by an abnormal proliferation of fibrous tissue resulting in expansion and distortion of the bone structure. The appellant has suffered from the disease for 15 years. The medical evidence indicates it has deformed his left foot and also is present in his rib area and left arm.

The appellant was last employed in a permanent position by Leslie Brothers Equipment Company, in Cowen, West Virginia. Although the appellant performed a number of different jobs during the six years he was employed by Leslie Brothers, his primary work was a heavy equipment mechanic. This job required lifting loads of 50 to 70 pounds, walking, stooping, and bending over. While with Leslie Brothers, the appellant worked for a time in the parts room selling parts to bulldozer and other heavy equipment. However the apellant did not

adapt to this work and returned to mechanical work after six months in the parts room.

The appellant ceased work at Leslie Brothers on August 1, 1979, when he broke his diseased left arm for the third time and surgery was required to repair it. He has not worked full time since that date, and his family presently subsists solely on food stamps. The appellant's wife has her own medical problems, and is also unemployed.

On February 11, 1980, the appellant applied for benefits under the Aid to Families with Dependent Children program (AFDC). The AFDC program is a creation of federal statute administered by the states under a scheme of cooperative federalism. It is designed to furnish financial assistance, rehabilitation, and other services to needy children and the parents or relatives with whom they are living, to help maintain and strengthen family life, and to help the parents or relatives to become self-supporting. 42 U.S.C.A. § 601 (1974). A "needy child" under the AFDC program must be one whose parent–father or mother–has died, has a physical or mental incapacity, or is continually absent from the home. 45 C.F.R. § 233.90(c)(1)(i) (1980).

The appellant applied for AFDC benefits on the grounds that he was an incapacitated father suffering from a severe impairment which substantially reduced his ability to care for his child, and prevented him from working full-time at a job. On April 8, 1980, the State Department of Welfare Area Review Team (ART) denied the appellant's request for benefits on the grounds that he was not "incapaciated" as required by department regulations, but found that he should be limited to light work.

On April 16, 1980, the appellant gave notice that he wished to have his application reviewed by the State Office Review Team (SORT), which on May 7, 1980 affirmed the decision of the ART. The appellant next requested an administrative hearing concerning the merits of his application.

A hearing was held on June 5, 1980 before a state hearing officer. At this hearing, the appellant testified that although he graduated from high school, he has never received any vocational training or training for office skills. Although he did take typing, he was forced to quit because of stiffness in his fingers. He testified to considerable pain in his left leg and in his ribs, which made breathing difficult.

Medical evidence pertaining to the appellant's condition was submitted in the form of medical reports from the treating physician, Dr. Antonio, a specialist in orthopedics; and the consulting physician, Dr. R. Paul Bennett. Neither physician was present to testify at the hearing.

Dr. Bennett's letter stated that the appellant had suffered multiple fractures of both his ribs and extremities, was suffering from fibrous dysplasia and osteoarthritis, and that he complained of constant discomfort. Dr. Bennett noted that because of the appellant's condition "he has not been able to continue in his usual line of occupation and is prresently unemployed." It was DR. Bennett's opinion that the appellant "should receive the benefits of some type of assistance till possibly other lines of occupation might become available . . . ."

In his report, Dr. Antonio stated that the appellant was probably unsuited to any form of heavy physical manual labor but could, in his opinion, be gainfully employed in a sendentary occupation.

Based on the report of Dr. Antonio, the hearing officer ruled in favor of the Department of Welfare, and denied the appellant AFDC benefits.

The appellant sought an appeal of the hearing officer's decision by way of writ of certiorari in the Circuit Court of Kanawha County, alleging that the hearing officer's decision was erroneous in that it did not give proper weight to the medical evidence presented on behalf of the appellant, and was contrary to state and federal regulations defining "incapacity" for AFDC purposes, by failing to consider the limited employment opportunities of

handicapped individuals, and the age, education, training and experience of the appellant.

The circuit court, by order entered January 14, 1981, found that the decision of the hearing officer was not "arbitrary, capricious, or contrary to the law and evidence," and affirmed the decision as "plainly right." From that decision the appellant takes this appeal.

There are three primary issues presented by this appeal: (1) did the state hearing officer considered all the required factors in determining the alleged incapacity of the appellant; (2) must the state hearing officer's decision contain findings of fact on all pertinent issues and a reasoned explanation of the ultimate conclusion; and (3) must the circuit court, on a writ of certiorari, make an independent review of law and fact.

## I.

The federal standard for determining incapacity for AFDC purposes is found at 45 C.F.R. § 233.90(c)(iv) (1980). The regulation provides, in pertinent part:

> "Physical or mental incapacity" of a parent shall be deemed to exist when one parent has a physical or mental defect, illness or impairment. The incapacity shall be supported by competent medical testimony and must be of such a debilitating nature as to reduce substantially or eliminate the parent's ability to care for the otherwise eligible child and be expected to last for a period of at least 30 days. In making the determination of ability to support, the agency shall take into account the limited employment opportunities of handicapped individuals.

The appellant contends the decision of the hearing officer denying him benefits was erroneous because in determining incapacity the hearing officer failed to consider the limited employment opportunities of handicapped individuals as required by the federal regulations.

The appellant's contention is supported by the record before this Court. The record indicates that the hearing officer relied solely upon the provisions of § 6330 of the

Department of Welfare's Economic Services Manual to determine whether the appellant met the definition of incapacity. Section 6330 provides:

> A child may be deprived of parental support or care by reason of the physical or mental incapacity of the parent. Incapacity exists when a parent has a physical or mental defect, illness or impairment. The incapacity must be supported by medical reports and must substantially reduce or eliminate the parent's ability to support or care for the child(ren). The incapacity must be expected to last for at least a period of thirty (30) days. In order for the deprivation factor to be based on incapacity, both parents must be residing in the home with the children for whom the application is being made except that the incapacited parent may be temporarily out of the home for medical care or treatment.

It is readily apparent from a reading of the state and federal regulations that § 6330 fails to incorporate the requirement of federal law that the agency consider the limited employment opportunities of handicapped individuals in making the determination of ability to support.

Such an omission of a factor required to be considered by federal regulation is in direct violation of W. Va. Code § 9-2-3 (1976 Replacement Vol.), which specifically requires the State Department of Welfare to expend federal-state assistance appropriations in accordance with the conditions imposed by applicable federal laws, rules and regulations. Moreover, it is by now axiomatic that the manner in which a state administers a federal assistance program must be consistent with federal law. *See, e.g., Shea v. Vialpando*, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Thus to the extent that there is a federal regulation defining incapacity the Department of Welfare must yield to that law. *See State ex rel. Kearns v. Fox*, 165 W.Va. 421, 268 S.E.2d 65 (1980). Accordingly, since the state hearing officer failed to consider the limited

employment opportunity of the appellant due to his handicap, his decision is clearly erroneous.

The appellant further contends that the state hearing officer failed to consider several other required factors in reaching his decision regarding incapacity. These factors include the appellant's age, education, training and experience, as well as the subjective evidence of pain presented by the appellant at the hearing.

That the hearing officer is required to consider the appellant's age, education, training and experience when determining incapacity is clear from the provisions of § 6331 of the Department of Welfare's Economic Services Manual, which provides:

> In order for the parent who is the customary wage earner to be considered as incapacitated it must be determined that he has a medically established mental or physical impairment which prevents him from working full-time in a job in which he has customarily engaged or prevents him from working full-time in another job for which he is equipped by age, education, training and experience. Also the incapacity must be expected to last for at least 30 days.

The decision of the hearing officer, however, is devoid of discussion of the evidence presented by the appellant regarding his age, education and work experience.

In like manner, the hearing officer's decision fails to discuss the evidence of pain presented by the appellant, and while there is no specific requirement in the state or federal regulations that evidence of pain must be considered by the hearing officer in reaching his decision, it is obvious that evidence of pain is relevant in determining the effect of an incapacity on a person's ability to perform gainful work, and as such, is a factor which the hearing officer should have considered. *Cf. Myers v. Califano*, 611 F.2d 980 (4th Cir. 1980); *Thorne v. Weinberger*, 530 F.2d 580 (4th Cir. 1976).

## II.

The appellant next contends that the circuit court erred in affirming the agency's decision because the hearing officer failed to consider the evidence presented at the hearing in the manner required by state and federal law. Specifically, the appellant argues that the hearing officer's decision must contain findings of fact on all the pertinent issues and a reasoned explanation of his ultimate conclusions. We agree.

The federal regulations governing the administration of the AFDC program require at a minimum that "[d]ecisions by the hearing authority shall ... specify the reasons for the decision and identify the supporting evidence and regulations." 45 C.F.R. § 205.10(a)(15) (1980). Moreover, the Department of Welfare's own regulations specify:

> The State Hearing Officer shall weigh the evidence and testimony presented and render a decision based solely on proper evidence given at the hearing. His decision must also be based on the facts as they existed at the time of the Department's action or proposed action at issue and related policies.
>
> * * *
>
> If the policy was properly and correctly followed, the State Hearing Officer will uphold. It will be of utmost importance at this point that it be explained carefully so that the claimant understands the policy and the reason for the decision.
> West Virginia Department of Welfare
> Common Chapters Manual § 780(D) (1980).

Clearly these regulations contemplate that the hearing examiner wil make a reasoned decision that is supported by the evidence presented at the hearing.

In *Clarke v. West Virginia Board of Regents,*____ W.Va. ____, 279 S.E.2d 169 (1981), we were faced with a situation similar to that in the case at bar. *Clarke* involved a college professor whose dismissal from a teaching position was upheld after a hearing before a Board of Regents' hearing

examiner. As in this case, the agency decision was exempt from the provisions of the Administrative Procedure Act, *see* W. Va. Code § 29A-1-2 (1980 Replacement Vol.); *State ex rel. Ginsberg v. Watt,*___ W.Va. ___, ___ S.E.2d ___ (No. 15386, Dec. 11, 1981), but agency regulations required the hearing examiner to "enter such recommendations as the facts justify and the circumstances may require." *Clarke, supra,* at 177. Based on the agency regulation we held: "At the very least, the hearing examiner should make some sort of findings on the record and indicate the evidence supporting those findings in order to demonstrate that he has fulfilled his obligations as a fact finder and has not acted arbitrarily and capriciously in reaching his conclusions." *Id.*

The decision of the hearing officer in this case is woefully inadequate under the standard enunciated in *Clarke.* The hearing officer's six-page report consists primarily of a summary of the evidence produced at the hearing, and a recitation of § 6330 of the Economic Services Manual. It is not until the last page of the report that an analysis of the evidence is attempted, and this portion of the decision merely recites the orthopedic report of Dr. Antonio and summarily concludes: "Based on the orthopedic report I am ruling in favor of the Department." Conspicuously absent is any discussion of the weight of the evidence presented by the appellant, and the relevant factors required to be considered by state and federal regulations.

In *Citizens Bank of Weirton v. West Virginia Board of Banking and Financial Institutions,*___ W.Va. ___, 233 S.E.2d 719 (1977), we examined the requirements of the State Administrative Procedures Act, W. Va. Code §§ 29A-1-1 *et seq.* (1980 Replacement Vol. & Cum. Supp. 1981), with regard to agency decisions, and held:

> When W. Va. Code, 29A-5-3 [1964] says: "Every final order or decision rendered by any agency in a contested case shall be in writing or stated in the record and shall be accompanied by findings of fact and conclusions of law. . . ." the law contemplates a reasoned, articulate decision which sets

forth the underlying evidentiary facts which lead the agency to its conclusion . . . .

> Syllabus Point 2, in part, *Citizens Bank of Weirton v. West Virginia Board of Banking, etc., supra.*

Our decision in *Citizens Bank* was premised upon the design of administrative law to guarantee the rationality of the process through which results are determined, and upon the necessity of a record for appellate review. Although *Citizens Bank* dealt with a decision under the Administrative Procedure Act, from which the Department of Welfare is excluded, *see State ex rel. Ginsberg v. Watt, supra,* we recently indicated in *Monongahela Power Company v. Public Service Commission,___ W.Va. ___,* 276 S.E.2d 179 (1981), that the principles of *Citizens Bank* are clearly applicable to any administrative review. 276 S.E.2d at 182 n.4.

The principles of administrative law recognized in *Citizens Bank,* and reiterated in *Clarke v. West Virginia Board of Regents, supra,* and *Monongahela Power Company v. Public Service Commission, supra,* clearly contemplate that a final agency decision which affects the substantial rights of an individual must contain findings of fact on all the pertinent issues and a reasoned explanation of the ultimate conclusion reached. The decison of the hearing officer in this case fails under the principles of *Citizens Bank,* as well as under the standards set out in the pertinent state and federal regulations, and therefore should not have been affirmed by the circuit court.

### III.

Appellant sought review of the hearing officer's decision denying him benefits in the Circuit Court of Kanawha County by way of writ of certiorari. The circuit court accepted the appellant's petition and considered the matter upon the pleadings, transcripts of evidence taken at the administrative hearing, and the briefs filed by counsel. By order dated January 14, 1981, the circuit court

held that the decision of the hearing officer was not "arbitrary, capricious, or contrary to the law and evidence," and affirmed that decision as "plainly right."

The appellant contends that in applying an "arbitrary and capricious" standard, the circuit court employed the wrong scope of review. He argues that when the circuit court reviews a decision of a state hearing officer on a writ of certiorari, it must make an independent review of law and fact, and make findings of fact and conclusions of law on all the issues.

Originally the writ of certiorari existed as a limited remedy and served primarily as a means of reviewing the actions of inferior tribunals to determine if they had exceeded their jurisdiction. *North v. West Virginia Board of Regents*, 160, W. Va. 248, 233 S.E.2d 411 (1977). In 1882, however, the Legislature substantially broadened the application of the writ, and the extent of review it affords, with the enactment of the language we now find in W. Va. Code § 53-3-3 (1981 Replacement Vol.), which requires the circuit court on a writ of certiorari to "review such judgment, order or proceeding, of the county court, council, justice or other inferior tribunal upon the merits, determine all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter as law and justice may require."[1] Although

---

[1] W. Va. Code § 53-3-3 provides in its entirety:

In every case, matter or proceeding before a county court, council, justice or inferior tribunal, in which a writ of certiorari would lie according to the provisions of the proceeding section [§ 53-3-2], the majority of the commissioners composing a court, or the justice or the officer of officers presiding over such council or other inferior tribunal, shall, upon request of either party in a civil case, matter or proceeding, or the defendant in a criminal case, matter or proceeding, certify the evidence, if any, which may have been heard, and sign bills of exceptions, or certificates as provided in section thirty-six [§ 56-6-36], article six, chapter fifty-six of this Code, setting forth any rulings or orders which may not otherwise appear of record. Such certificate of evidence and bills of exceptions or certificates shall be part of the record and as such be removed and returned to the circuit court. The clerk upon receiving such record shall file the same and docket

this statutory language caused some confusion in the early years after its enactment, *see McClure–Mabie Lumber Co. v. Brooks*, 46 W.Va. 732, 34 S.E. 921 (1899), it was generally recognized that the statue substantially expanded the scope of review of the circuit court, giving it the power to rehear the issues on the evidence certified from the inferior tribunal. *See, e.g., Long v. Ohio River R. Co.*, 35 W.Va. 333, 13 S.E. 1010 (1891); *Harbert v. Monongahela River R. Co.*, 50 W.Va. 253, 405 S.E. 377 (1901).

This Court offered some explanation of the scope of review afforded by the statutory language of W. Va. Code § 53-3-3 in *Humphreys v. County Court of Monroe County*, 90 W.Va. 315, 110 S.E. 701 (1922), and *Snodgrass v. Board of Education*, 114 W.Va. 305, 171 S.E. 742 (1933). *Humphreys* involved review by writ of certiorari of a county court decision. In *Humphreys* we held that on review by writ of certiorari "the circuit court has jurisdiction and power ... to hear and determine the matter in controversy, upon the record made in the county court, and enter such judgment as the county court should have entered." Syllabus Point 5, *Humphreys v. County Court of Monroe County, supra.*

Snodgrass involved review by writ of certiorari of a decision of the board of education of an independent school district. In *Snodgrass* we stated:

> The function of certiorari has been considerably expanded by the statute, under the terms which

---

the case, in the same manner that other cases are docketed. Upon the hearing, such circuit court shall, in addition to determining such questions as might have been determined upon a certiorari as the law heretofore was, review such judgment, order or proceeding, of the county court, council, justice or other inferior tribunal upon the merits, determine all questions arising on the law and evidence, and render such judgment or make such order upon the whole matter as law and justice may require. But all such cases removed as aforesaid from before a justice to the circuit court, wherein the amount in controversy is more than fifteen dollars, and in which the judgment of the justice is set aside, shall be retained in such court and disposed of as if originally brought therein.

(Code, 53-3-3), it is provided that circuit courts 'shall, in addition to determining such questions as might have been determined upon a certiorari as the law heretofore was, review such judgment, order or proceeding, of the county court, council, justice or other inferior tribunal upon the merits, determine all questions arising on the law and evidence, and render such judgment, or make such order upon the whole matter as law and justice may require,' This means that the circuit court shall enter such judgment as the inferior court should have entered, not only in consideration of questions of law but of fact as well. *Humphreys v. Monroe County Court*, 90 W. Va. 315, 110 S.E. 701. It is therefore seen that the circuit judge upon hearing upon a writ of certiorari as provided for in this statute, is reviewing both law and fact, and is vested with the power to enter a proper judgment in consideration of both. This makes the circuit court, to all intents and purposes, a fact finding tribunal upon the record as it was before the inferior court.

114 W. Va. at 306, 171 S.E. at 742-743.

The role of the circuit court on certiorari as a fact finding tribunal, with the power to enter judgment as law and justice may require, is inconsistent with the arbitrary and capricious standard of review employed by the circuit court in this case. It is generally recognized in administrative law that under the "arbitrary and capricious" standard, the scope of review is a narrow one, the issues being limited to whether the agency decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. *See, e.g., Bowman Transportation, Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 285, 95 S.E. 438, 42 L.Ed.2d 447 (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Although the "arbitrary and capricious" standard requires a searching and careful inquiry into the facts, the ultimate scope of review is narrow, and the reviewing court is not empowered to substitute its judgment for that of the agency.

There is language in some relatively recent opinions of this Court indicating that if an inferior tribunal's decision is arbitrary and capricious it should not be affirmed by the circuit court on certiorari. *See North v. West Virginia Board of Regents, supra; Beverline v. Board of Education of Lewis County*, 158 W.Va. 1067, 216 S.E.2d 554 (1975). While we agree that an arbitrary and capricious decision of an inferior tribunal should not be affirmed by the circuit court on certiorari, in light of the language of W. Va. § 53-3-3 these cases cannot be read as limiting the circuit court on certiorari to an arbitrary and capricious standard of review. Such a result would be inconsistent with our holding in *North* that in proper circumstances, the circuit court on certiorari is authorized to take evidence independent of that contained in the record of the lower tribunal. *North, supra*, at 419.

Moreover, we recently held in *Golden v. Board of Education of the County of Harrison,____* W.Va. ____, ____ S.E.2d ____ (No. 15211 Dec. 18, 1981), a case involving review by the circuit court on certiorari of a county board of education administrative ruling, that "[w]hen the circuit court sits in review of the decision of . . . administrative tribunals it shall record findings of fact and conclusions of law along with the judicial orders which it issues." Syllabus Point 1, in part, *Golden v. Board of Education of the County of Harrison, supra*. It is obvious that the circuit court could not comply with this requirement without making its own independent review of the law and facts pertinent to the case.

We therefore hold that on certiorari the circuit court is required by W. Va. Code § 53-3-3 to make an independent review of both law and fact in order to render judgment as law and justice may require.[2] Since the circuit court in

---

[2] We note that this is the interpretation given to W. Va. Code § 53-3-3 by the Department of Welfare itself. Section .90 of the department's Common Chapters Manual provides:

Upon a decision of a State Hearing Officer, the claimant will be advised he may bring a petition in the Circuit Court of Kanawha County or the Circuit Court of the county in which the petitioner

this case limited its review to an arbitrary and capricious standard, its decision affirming the appellant's denial of AFDC benefits is erroneous.

## IV.

Finally, the appellant argues that the evidence produced at the hearing conclusively established that he met the applicable federal standard of incapacity, and requests this Court to award him AFDC benefits. While we agree with the appellant that the evidence indicates his eligibility for AFDC benefits under the pertinent state and federal regulations, it is not within the purview of our powers to award him benefits in this case.

Our function as a reviewing court is to review the record to determine if the evidence adduced below supports the findings of the inferior tribunal, and whether the tribunal's conclusions follow from those findings. However, if the record of the proceedings below does not reveal those facts which were determinative of the ruling or the logic behind the ruling, we are powerless to review the lower tribunal's action. *Clarke v. West Virginia Board of Regents, supra.* Since neither the state hearing officer nor the circuit court made findings of fact upon which we can base a decision, we cannot award the relief the appellant requests.

Accordingly, we remand the case to the circuit court with directions to make an independent review of both the law and facts involved in this case, and to make findings of fact and conclusions of law on all the issues, in

---

resides within a reasonable period of time from receipt of the hearing decision.

The Court may grant an appeal *and may determine anew all questions submitted to it on appeal from the decision or determination of the State Hearing Officer.* In such appeals, a certified copy of the hearing determination or decision is admissible and may constitute prima facie evidence of the hearing determination or decision. Furthermore, the decision of the Circuit Court may be appealed by the client or petitioner to the Supreme Court of Appeals of the State of West Virginia. (Emphasis added.)

order to "render such judgment or make such order upon the whole matter as law and justice may require." W. Va. Code § 53-3-3.

*Reversed and remanded with directions.*