457 S.E.2d 488

**Roxie Annette WEBER, Plaintiff Below, Appellant**

v.

**Jeffrey Michael WEBER, Respondent Below, Appellee.**

No. 22291.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 17, 1995.

Decided April 13, 1995.

Joni Cooper Rundle, Rundle & Rundle, L.C., Pineville, for appellant.

Jeffrey Michael Weber, pro se.

PER CURIAM:

 Roxie Annette Weber appeals the final divorce order of the Circuit Court of Wyoming County ordering supervised visitation for the parties' infant daughter by Jeffrey Michael Weber, her former husband. On appeal, Ms. Weber maintains that the circuit court's order concerning supervised visitation is too vague and the circuit court failed to consider the qualifications of the persons allowed to supervise the visitation. Because we agree that visitation order is too vague and that additional consideration of the supervised visitation is required, we reverse and remand this case for further proceedings.

After about two and one-half years of marriage, Ms. Weber sought a divorce alleging irreconcilable differences and physical and mental cruelty. Stephanie Nicole, the parties' only child, was born on January 28, 1992. The matter was heard by a family law master who notified the parties of her recommended decision indicating that objections to

the decision must be filed by September 13, 1993. According to the certificate of service, Ms. Weber's lawyer mailed her objections to the visitation proposed in the recommended order on September 10, 1993. By order dated September 20, 1993, the circuit court adopted the family law master's recommended decision. By letter dated October 26, 1993, the circuit court affirmed his September 20, 1993 order.

Ms. Weber, as a fit person and the child's primary caretaker, was awarded custody. Alleging Mr. Weber had limited involvement with his young daughter and an unstable lifestyle, Ms. Weber requested that Mr. Weber's visitation be limited to supervised visitation at the child's home.[1] The need for supervised visitation was not contested.[2] To supervise Mr. Weber's visitation, Ms. Weber proposed several neighbors and Mr. Weber, who later moved to New Jersey, proposed his brother, age 21 and a friend who lives in New Jersey.[3] The circuit court awarded visitation to Mr. Weber "on alternate Holidays and during the summer vacation provided he gives twenty-four hours notice of his intent to visit … [and] that one of the individuals in the Defendant's Exhibit # 1 be present during said visitation."

Alleging that the circuit court's order concerning Mr. Weber's visitation was too vague and that no consideration had been given to the qualifications of the visitation supervisors, Ms. Weber appealed to this Court. Ms. Weber also alleges that the circuit court failed to review her objections before entering a final order and that the court erred in granting the divorce on the grounds of irreconcilable differences because such differences were denied by Mr. Weber.

I

 Although visitation has long been part of the relief granted in a divorce, the legislature recently amended *W.Va.Code* 48–2–15(b)(1) [1993] to state that "the court shall

1. Ms. Weber and her daughter live with Ms. Weber's parents.

2. After the only hearing before the family law master, both parties, pursuant to the family law master's request, submitted the names of persons each proposed to supervise visitation. Mr. Web-

er's list was designated "Defendant's Exhibit # 1."

3. The family law master noted that because the Dept. of Health and Human Services was not already providing services for the child, the Dept. was not available to supervise visitation.

*specify a schedule* for visitation by the non-custodial parent.... [Emphasis added.]"[4] The circumstances of each case must determine the detail included in the visitation schedule. In cases where supervised visitation is ordered, the visitation schedule must, by necessity, be more detailed.[5] *See Honaker v. Burnside,* 182 W.Va. 448, 388 S.E.2d 322 (1989) (requiring a phased-in visitation plan to reestablish the relationship between a natural parent and his child); *James M. v. Maynard,* 185 W.Va. 648, 657–58, 408 S.E.2d 400, 409–10 (1991) (special needs of the children required a gradual transition period); *Mary D. v. Watt,* 190 W.Va. 341, 438 S.E.2d 521 (1992) (supervised visitation required because of allegation of sexual abuse by noncustodial parent).

It is well established that the word "shall," in the absence of language in the statute showing a contrary intent on the part of the Legislature, should be afforded a mandatory connotation.

Syl. pt. 1, *Nelson v. W.Va. Public Employees Ins. Bd.,* 171 W.Va. 445, 300 S.E.2d 86 (1983). *Accord* Syl. pt. 2, *State ex rel. Billy Ray C. v. Skaff,* 190 W.Va. 504, 438 S.E.2d 847 (1993); Syl. pt. 1, *Liller v. W.Va. Human Rights Com'n,* 180 W.Va. 433, 376 S.E.2d 639 (1988). *See Ash v. Ravens Metal Products, Inc.,* 190 W.Va. 90, 94, 437 S.E.2d 254, 258 (1993).

Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.

Syl. pt. 2, *State v. Elder,* 152 W.Va. 571, 165 S.E.2d 108 (1968). *See also State ex rel. Laurel Mountain v. Callaghan,* 187 W.Va. 266, 270, 418 S.E.2d 580, 584 (1992); Syl. pt. 1, *Tanner v. Workers' Compensation Com'r,* 176 W.Va. 427, 345 S.E.2d 29 (1986).

In this case, the circuit court required supervised visitation on alternate holidays and summer vacation, but failed to "specify a schedule for visitation" as required by *W.Va. Code* 48–2–15(b)(1) [1993]. The family law master's recommended order, which was adopted by the circuit court, failed to state: (1) Where the visitation should occur; (2) which party or parties are responsible for transportation; and, (3) what is meant by "alternative Holidays" and "summer vacation." Given that this case involves supervised visitation between a child of tender years and a parent who lives out-of-state, the order is too vague. Without a clear visitation schedule order, a new battleground on visitation will erupt until the noncustodial parent surrenders and another child is denied a parent. To avoid the visitation battleground, the different circumstances of each case must be reflected in the visitation order.

II

■ Mrs. Weber maintains that neither the family law master nor the circuit court considered the qualifications of the persons proposed to supervise the visitation, or the nature of supervision. Mrs. Weber alleges that the court-approved supervisors have had little or no contact with the child. However, because no hearing was held on the proposed visitation supervisors, no information is available concerning the proposed visitation supervisors' contact with the child or their relative ability to supervise properly.

■ Recently in several cases discussing supervised visitation, this Court noted two primary concerns: (1) the child's emotional and physical well-being, and (2) the non-

---

4. *W.Va.Code* 48–2–15(b) [1993] states, in pertinent part:

Upon ordering the annulment of a marriage or a divorce or granting of decree of separate maintenance, the court may further order all or any part of the following relief:

(1) The court may provide for the custody of minor children of the parties, subject to such rights of visitation, both in and out of the residence of the custodial parent or other person or persons having custody, as may be appropriate under the circumstances. In every action where visitation is awarded, the court shall specify a schedule for visitation by the noncustodial parent: Provided, That with respect to any existing order which provided for visitation but which does not provide a specific schedule for visitation by the noncustodial parent, upon motion of any party, notice of hearing and hearing, the court shall issue an order which provides a specific schedule of visitation by the noncustodial parent.

5. In cases with an existing non-specific visitation order, under *W.Va.Code* 48–2–15(b)(1) [1993], the circuit court can reconsider visitation "upon motion of any party, notice of hearing and hearing."

custodial parent's right to a close relationship with his or her child. In *Mary D.*, we emphasized the child's emotional well-being and required that "person(s) appointed to supervise the visitation . . . have . . . some prior contact with the child." Syl. pt. 3, in part, *Mary D.* (concerning allegations of sexual abuse by a parent which must be considered prior to ordering supervised visitation).[6] In Syl. pt. 9, *White v. Williamson*, 192 W.Va. 683, 453 S.E.2d 666 (1994) (concerning allegations of alcohol consumption), we stated:

> In considering visitation issues, the courts must be mindful of their obligation to facilitate the right of the non-custodial parent to a full and fair chance to continue to maintain a close relationship with his or her children.

In both *Mary D.* and *White*, the family law masters held hearings to consider some visitation issues. *See Mary D.*, 190 W.Va. at 343–44, 438 S.E.2d at 523–24; *White*, 192 W.Va. at 694, 453 S.E.2d at 677 (during the hearing, Mrs. White should "have been allowed to develop her allegations regarding the need to impose restrictions regarding alcohol consumption during . . . visitation").

 When supervised visitation is required, the family law master must give the parties a fair opportunity to be heard on the proposed visitation supervisors. Exceptional circumstances, in cases such as *Mary D.*, require a thorough examination of visitation supervisors because the supervisors need to

protect a child "from further physical . . . and psychological harm." *Mary D.*, 190 W.Va. at 349, 438 S.E.2d at 529. However, ordinary cases involving simple child care do not require such extraordinary measures. But, in all cases, the family law master must consider both the child's needs and the non-custodial parent's right to visitation. In cases involving simple child care, expert witnesses are not required and the natural parents of a child are presumed to be capable of caring for a young child.[7] *See* Syl. pt. 5, *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989) for the factors to be considered when determining if a primary caretaker is a fit parent.

In this case, both parties proposed visitation supervisors and without any hearing, Mr. Weber's proposed supervisors were selected. On remand, the circuit court should give the parties a fair opportunity to be heard on this issue.[8]

Because the circuit court failed to "specify a schedule for visitation by the noncustodial parent" as required by *W.Va.Code* 48–2–15(b) [1993], and failed to consider both the child's best interests in appointing visitation supervisors and the non-custodial parent's right to "full and fair chance to continue to maintain a close relationship", we reverse the circuit court and remand this case for further proceedings.

For the above stated reasons, the decision of the Circuit Court of Wyoming County is

---

6. Syl. pt. 3, *Mary D. supra* stated:
 Where supervised visitation is ordered pursuant to W.Va.Code, 48–2–15(b)(1) [1991], the best interests of a child include determining that the child is safe from the fear of emotional and psychological trauma which he or she may experience. The person(s) appointed to supervise the visitation should have had some prior contact with the child so that the child is sufficiently familiar with and trusting of that person in order for the child to have secure feelings and so that the visitation is not harmful to his or her emotional well being. Such a determination should be incorporated as a finding of the family law master or circuit court.

7. In cases where there is an objection by the non-custodial parent to supervised visitation, it is the burden of the custodial parent to prove that supervision is needed. In the instant case, no such objection was made.

8. Ms. Weber also alleges that the circuit court failed to review her objections. Because the case is remanded for consideration of the visitation schedule, this objection need not be discussed. We do note that the number of domestic relation cases have increased dramatically at the circuit court level and constitute over one-third of the civil and more than one-fourth of the total circuit court caseload. *West Virginia State Court System, Caseload Report for Fiscal Year 1994*, W.Va. Supreme Court of Appeals, Administrative Office, January 1995.

 For the first time in her appeal to this Court, Ms. Weber questions the grounds for her divorce. However, Ms. Weber waived those claims when she failed to object to that part of the family law master's recommended order. *W.Va.Code* 48A–4–18 [1993] states that "[p]arts of the master's report not excepted to are admitted to be correct."

reversed and we remand this case for proceedings consistent with this opinion.

Reversed and remanded.