506 S.E.2d 85

**Dorothy M. HAWK, Appellant**

v.

**Cleo L. HAWK, Jr., Appellee.**

**No. 24504.**

Supreme Court of Appeals of
West Virginia.

Submitted Feb. 18, 1998.

Decided July 10, 1998.

John G. Ours, Petersburg, for Appellant.

James Paul Geary, II, Petersburg, for Appellee.

## PER CURIAM:[1]

In this post-divorce visitation controversy, Mrs. Dorothy Hawk (hereinafter "Appellant") appeals an order of the Circuit Court of Grant County denying her the visitation rights enumerated in a divorce order. The Appellant's former husband, Mr. Cleo Hawk (hereinafter "Appellee"), had been granted custody of the parties' two children. We reverse and remand for reinstatement of the visitation rights specified in the divorce order.

Pursuant to a December 17, 1996, final divorce order,[2] custody of the parties' two sons, Brian, born on February 26, 1983, and Derek, born on June 26, 1985, was granted to the Appellee, with visitation to the Appellant. No objections were raised concerning the visitation or custody arrangements. In the presence of the Appellant's counsel during the final divorce proceedings, the Appellee suggested that he would forbid his sons from visiting their mother after they became adults and would write them out of his will if they did so. Visitation with the mother did occur on December 18, 1996. The scheduled Christmas 1996 visitation did not occur, and there has apparently been only one visitation between the Appellant and her sons since December 1996.

On January 7, 1997, the Appellant filed a contempt motion seeking to enforce the visitation schedule set forth in the divorce order. During a February 5, 1997, hearing on that motion, the Appellee explained that the children did not wish to visit the Appellant. The lower court then asked the parents to leave, and the court questioned the boys regarding their visitation with the mother. From the record of that exchange, it appears that the boys were unable to provide the court with any explanation for their hesitance to visit the Appellant, and at the conclusion of the conversation with the boys, the lower court ordered a trial visitation scheduled for February 15, 1997, from 9:00 a.m. until 5 p.m. The order further indicated that the court would "contact the infant boys by phone and make inquiry as to all relevant matters regarding visitation. Thereafter, the Court shall determine if any further hearing is necessary and if not, shall enter a written opinion as to the issues presented in the Petition for Contempt." The lower court apparently engaged in an ex parte communi-

---

1. We point out that a per curiam opinion is not legal precedent. *See Lieving v. Hadley*, 188 W.Va. 197, 201 n. 4, 423 S.E.2d 600, 604 n. 4 (1992).

2. The Appellant had filed for divorce on December 18, 1995, seeking custody of the two sons. The Appellee answered the divorce complaint and also sought custody of the sons. On January 11, 1996, the family law master granted temporary custody of the boys to the father, based upon their desire to be placed with the father, and visitation was granted to the Appellant. Problems with visitation allegedly began in February 1996 when the children expressed hesitance to visit the Appellant.

cation with the boys at some time subsequent to February 15, 1997, of which we have no record.

In à March 24, 1997, written order, the lower court ruled that the Appellee was not in contempt. The lower court stated: "the court would find, if necessary, that Dorothy Hawk is the at-fault party to this divorce and the children are aware of this and it would be emotionally and psychologically damaging and not in the best interests of the children for the Court to force visitation."

■ The Appellant requests this Court's review, alleging that the lower court erred in (1) failing to find the father in contempt for violating the visitation order, and (2) failing to enforce that prior visitation order. We agree with the Appellant's contentions and reverse and remand for enforcement of the visitation schedule enumerated in the divorce order. As the Appellant asserts, the only factual basis the lower court offered for its conclusion that the boys should not visit their mother was the statement in the March 24, 1997, order to the effect that the mother was at fault in the divorce and that the children would be emotionally and · psychologically damaged by forced visitation. No specific factual bases were offered for those conclusions.

Where the actions of the parent do not affect the child, we have been cautious in considering fault in the visitation determination. In *David M. v. Margaret M.*, 182 W.Va. 57, 385 S.E.2d 912 (1989), for instance, the lower court had ruled that the mother and primary caretaker of the child was not a fit and suitable person to have permanent care and custody of the child based upon her sexual activities. 182 W.Va. at 59, 385 S.E.2d at 914. We held that the lower court erred by holding that three instances of sexual misconduct, occurring over two years, warranted a finding of unfitness, without evidence establishing that the child was harmed or that the conduct per se was so outrageous, given contemporary moral standards, as to call into question her fitness as a parent. 182 W.Va. at 72, 385 S.E.2d at 927.

In syllabus point four of *J.B. v. A.B*, 161 W.Va. 332, 242 S.E.2d 248 (1978), we explained:

Acts of sexual misconduct by a mother, albeit wrongs against an innocent spouse, may not be considered as evidence going to the fitness of the mother for child custody unless her conduct is so aggravated, given contemporary moral standards, that reasonable men would find that her immorality, per se, warranted a finding of unfitness because of the deleterious effect upon the child of being raised by a mother with such a defective character.

In *J.B.*, we emphasized that the award of custody "should not be an exercise in punishment of an offending spouse. In punishing the offending spouse one may also punish the innocent child, and our law will not tolerate that result." 161 W.Va. at 345, 242 S.E.2d at 256. *See also Kenneth L.W. v. Tamyra S.W.*, 185 W.Va. 675, 408 S.E.2d 625 (1991).

■ In syllabus point three of *Haller v. Haller*, 198 W.Va. 487, 481 S.E.2d 793 (1996), we explained as follows:

W.Va.Code 48–2–15 (1993) grants the circuit court in a divorce proceeding plenary power to order and enforce a noncustodial parent's visitation rights with his or her children. W.Va.Code 48–2–15(b)(1)(1993), visitation, provides, in pertinent part:

The court may provide for the custody of minor children of the parties, subject to such rights of visitation, both in and out of the residence of the custodial parent or other person or persons having custody, as may be appropriate under the circumstances. In every action where visitation is awarded, the court shall specify a schedule for visitation by the noncustodial parent. . . .

Syl. Pt. 2, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996).

■ We also expressed the concern for preserving the visitation rights of non-custodial parents in syllabus point nine of *White v. Williamson*, 192 W.Va. 683, 453 S.E.2d 666 (1994): "In considering visitation issues, the courts must be mindful of facilitating the right of the non-custodial parent to a full and fair chance to continue to have a close relationship with his children."

In syllabus point two of *Mary Jean H. v. Pamela Kay R.*, 198 W.Va. 690, 482 S.E.2d 675 (1996), we explained that "[a] court, in defining a parent's right to visitation, is charged with giving paramount consideration to the welfare of the child involved.' Syl. Pt. 1, *Ledsome v. Ledsome*, 171 W.Va. 602, 301 S.E.2d 475 (1983)." We have also recognized, however, that total suspension of visitation is justified only under the most severe circumstances. In *Mary Ann P. v. William R. P., Jr.*, 197 W.Va. 1, 475 S.E.2d 1 (1996), a case involving alleged sexual abuse and aggravated domestic violence, we acknowledged that upon certain occurrences, visitation could be suspended pending family therapy. We determined in *Mary Ann P.* that the record was "clear that forced visitation at this time would be detrimental to the children and futile on the defendant's behalf without professional intervention." 197 W.Va. at 8, 475 S.E.2d at 8; see also *Lufft v. Lufft*, 188 W.Va. 339, 343, 424 S.E.2d 266, 270 (1992) (explaining that the right to visitation is determined by considering the child's welfare). Even under the egregious circumstances of *Mary Ann P.*, we directed the lower court to determine a recommencement date for supervised visitation. 197 W.Va. at 8, 475 S.E.2d at 8 (citing *Weber v. Weber*, 193 W.Va. 551, 457 S.E.2d 488 (1995)). We specified that if no agreement regarding counseling could be reached, the lower court should "take any additional evidence needed and direct the participation in such counseling as a condition of the continuation of the plan for restoring visitation." *Id.*

Based upon our analysis of the record and the arguments of counsel in the present case, we conclude that the action taken by the lower court was not justified. The record is silent regarding detriment to these boys occasioned by visitation with their mother. In addressing the sufficiency of a final order in a divorce proceeding, we explained in *Province v. Province*, 196 W.Va. 473, 473 S.E.2d 894 (1996), that "[t]he order must be sufficient to indicate the factual and legal basis for the family law master's ultimate conclusion so as to facilitate a meaningful review of the issues presented. Where the lower tribunals fail to meet this standard—i.e. making only general, conclusory or inexact findings—we must vacate the judgment and remand the case for further findings and development." 196 W.Va. at 483, 473 S.E.2d at 904.

Where the reasons for a lower tribunal's decision are not clearly identified within the order, we cannot conduct a meaningful review. As we specified in *P.T.P., IV by P.T.P., III v. Board of Education of the County of Jefferson*, 200 W.Va. 61, 488 S.E.2d 61 (1997):

> Appellate courts, on review, rely heavily on the trial judge's order; the order is extremely important. The order often assists appellate courts in understanding what the trial court did and why, and good orders often rebut allegations made by appealing parties in briefs and arguments. If the lower tribunal is interested in having its decision affirmed, then the lower court should assist the appellate courts by providing comprehensive, well-reasoned orders. Submission of a comprehensive order assists an appellate court in finding a way to affirm the lower court's order.

200 W.Va. at 65, 488 S.E.2d at 65. We also expressed this concept in *Harrison v. Ginsberg*, 169 W.Va. 162, 286 S.E.2d 276 (1982), as follows:

> Our function as a reviewing court is to review the record to determine if the evidence adduced below supports the findings of the inferior tribunal, and whether the tribunal's conclusions follow from those findings. However, if the record of the proceedings below does not reveal those facts which were determinative of the ruling or the logic behind the ruling, we are powerless to review the lower tribunal's action.

169 W.Va. at 170, 286 S.E.2d at 284.

Based upon the absence of a factual recitation of the justification for the lower court's termination of parental visitation, we reverse the decision and remand for the reinstatement of visitation rights, as expressed in the divorce order.

Reversed and remanded.