637 S.E.2d 618

**MARY R., Plaintiff Below, Appellee**

v.

**BILLY D., Defendant Below, Appellant.**

**No. 32901.**

Supreme Court of Appeals of
West Virginia.

Submitted May 23, 2006.

Decided June 15, 2006.

Billy D., Pro Se, Gilbertsville, PA.

Charles Phalen, Jr., Bayliss & Phalen, PLLC, Charleston, for Mary R.

PER CURIAM:

This case is before this Court upon appeal of two final orders of the Circuit Court of Randolph County entered on December 22, 2004. In those orders, the court, affirmed, in part, and modified, in part, an order of the Family Court of Randolph County entered on September 2, 2004, and adopted a parenting plan with regard to Serena D.,[1] daughter of Billy D., the appellant and defendant below, and Mary R., the appellee and plaintiff below.

In this appeal, Billy D. seeks reversal or modification of the final orders. He contends that Serena's visitation with Mary R. should be supervised; that he should be reimbursed for child support he paid while Serena was in his custody; that he should be reimbursed for certain medical expenses he incurred for Serena from 1999 through 2001; that he should be reimbursed for his psychological evaluation which was ordered pursuant to a request from Mary R.; that the location for the exchange of custody should be changed to his residence; and that additional provisions agreed to by the parties should be incorporated into the parenting plan.

This Court has before it the entire record and the briefs of the parties. For the reasons set forth below, we find that Serena's visitation with Mary R. should be supervised. Accordingly, the final orders are reversed, and this case is remanded to the circuit court with directions to enter an order immediately remanding this case to the family court for further proceedings consistent with this opinion.

## I.

### FACTS

Billy D. and Mary R. are the parents of Serena D. who was born on April 29, 1993.

They were never married. On January 29, 1997, Mary R. filed a petition for custody and child support.[2] Subsequently, in October 1997, the parties signed a shared custody agreement. It was agreed that Mary R. would have physical custody of Serena subject to liberal visitation by Billy D. who would pay child support in the amount of $400.00 per month. Mary R. was residing in Randolph County, West Virginia, with Serena, her husband, Charlie R.,[3] and their son who was born in 1996. Billy D. lived in Pennsylvania.

In August 1999, Billy D. contacted West Virginia law enforcement and the West Virginia Department of Health and Human Resources (hereinafter "DHHR") and reported that Serena had told her maternal grandmother that she had touched her stepfather's penis. The DHHR immediately began an investigation. Billy D., who had Serena in his custody in Pennsylvania for her summer vacation pursuant to the custody agreement, elected not to return her to Mary R.'s residence. On September 17, 1999, Mary R. filed a motion for contempt contending that Billy D. had failed to comply with the custody agreement when he did not return Serena to her custody on August 23, 1999. On September 28, 1999, Billy D. responded by filing a motion for an emergency change of custody.

As part of the DHHR investigation, Serena was interviewed by a Pennsylvania social worker since she was still in Billy D.'s custody. Serena reported that she and her three-year-old half-brother sometimes played with her stepfather's penis and that her stepfather was nude when this occurred. The social worker found Serena to be very credible and consistent with her story.

Subsequently, Mary and Charlie R. were interviewed by the DHHR. They explained that they are nudists and often do not wear

---

1. We follow our traditional practice in cases involving sensitive facts and use initials to identify the parties rather than their full names. *See In the Matter of Jonathan P.*, 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. Serena had resided with her mother since birth.

3. Mary and Charlie R. were married in 1995.

clothing in their home. Mary and Charlie R. both acknowledged that Serena and her half-brother had touched Charlie R.'s penis and stated that they thought the touching was merely the result of childhood curiosity. Mary R. said that she told Serena to stop the touching.

On October 14, 1999, the circuit court entered an order granting Billy D.'s motion for an emergency change of custody.[4] The court found that there had been inappropriate sexual contact between Serena and Charlie R. Thereafter, Mary R. filed a motion for visitation. By order entered on February 16, 2000, the family law master granted supervised visitation to Mary R. On May 30, 2000, the family law master further ordered Mary R. to pay child support in the amount of $196.25 per month commencing on May 1, 2000. Billy D.'s obligation to pay child support was suspended retroactively to October 1, 1999. On August 27, 2003, the family court judge[5] granted a motion for modification filed by Mary R. and reduced her child support obligation to $131.00 per month commencing July 1, 2003.

A final hearing was scheduled by the Family Court of Randolph County for August 16, 2004. Prior to the hearing, the court was advised by counsel for Mary R. that Billy D. had called his office and indicated that he was on his way to the hearing, but would be late. Billy D. did not contact the family court directly to request a continuance. Thus, the court proceeded with the hearing. The court received into evidence a letter from Children's Protective Services of the DHHR indicating that services had been provided to Mary and Charlie R. and that Charlie R. had changed his behavior and had been allowed to return home.[6] Counsel for Mary R. presented parenting plans proposed by each party. Neither parenting plan was adopted as a whole. Instead, the family court designated Billy D. as the custodian of

Serena but granted Mary R. visitation with Serena every second and fourth weekend of every month in addition to certain designated holidays. The court directed the custody exchange to occur in Washington, D.C. The family court also stated that Charlie R. should not be left alone at any time with Serena.

Billy D. filed an appeal of the family court order with the circuit court. On December 22, 2004, the circuit court entered an order adopting, in part, and modifying, in part, the family court's order. The circuit court found that the family court did not abuse its discretion. However, the court determined that visitation on alternate weekends in the state of West Virginia would require Serena to spend as much as 32 hours per month in transit which would be excessive. The court also found that the custody exchange should take place at a point halfway between the parties rather than in Washington, D.C. Finally, the court stated that although the DHHR had provided services to Mary and Charlie R. and had now deemed their home suitable for children, nonetheless, Charlie R. should not be left as the supervising adult for Serena or otherwise alone in her presence. The parties were directed to meet immediately and attempt to negotiate a revised parenting plan. They did so, and on December 22, 2004, the court also entered an order adopting the revised agreed parenting plan. Pursuant to that order, Mary R. is entitled to custody of Serena one weekend per month in West Virginia as well as visitation with Serena one weekend a month in Pennsylvania. The parties further agreed to divide custody on holidays and school vacations as set forth in the agreement. Following entry of these orders, Billy D. filed this appeal.

## II.

## STANDARD OF REVIEW

In *Carr v. Hancock*, 216 W.Va. 474, 476, 607 S.E.2d 803, 805 (2004), we explained that,

---

4. This Court refused Mary R.'s appeal of the circuit court order granting emergency custody to Billy D. on May 4, 2000.

5. The family law master system ceased to operate on January 1, 2002, and was replaced by a system of family court judges. *See* W.Va.Code § 51–2A–23 (2001).

6. It appears that Charlie R. was required to move out of his home while DHHR investigated the alleged sexual abuse and provided services to the family.

This Court's standard of review for an appeal from a circuit court that reviewed a family court's final order, or refused to consider a petition for appeal to review a family court's final order, is the same. In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo.*

*See* W.Va.Code § 51–2A–15(b) (2001). With these standards in mind, we now consider the issues presented in this case.

### III.

### DISCUSSION

As set forth above, Billy D. has presented several grounds for reversal or modification of the circuit court's final orders. Having carefully reviewed the record, we find merit to his argument that Serena's visitation with Mary R. should be supervised, and for the reasons set forth below, we remand this case for implementation of a revised parenting plan that provides supervised visitation. With respect to Billy D.'s contention that he is entitled to reimbursement for child support he paid while Serena was in his custody, for medical expenses he incurred for Serena from 1999 to 2001, and for his psychological evaluation, we find his appeal of these issues to be untimely. The record shows that these issues were the subject of an order entered by the family court on May 21, 2003, which was affirmed upon the appeal of Mary R. by the circuit court on June 19, 2003. Billy D. filed an appeal of the May 21, 2003, order with the circuit court on June 30, 2003, which was denied as untimely on July 22, 2003. Those orders are now final and unappealable, and therefore, these issues cannot be raised again in this appeal. *See* W.Va. Code § 58–5–4 (1998); W.Va. R. Civ. P. 72.

The final orders that were entered on December 22, 2004, only concerned the permanent custody of Serena. Billy D. was designated as Serena's primary custodian and Mary R. was afforded visitation one weekend a month in West Virginia and a second weekend a month in Pennsylvania. Although Mary R.'s visitation with Serena had previously been supervised following the circuit court's finding in 1999 that inappropriate sexual contact had occurred between Serena and Charlie R., supervised visitation was discontinued without discussion except for reference to a letter submitted into evidence from the DHHR. That letter indicates that the DHHR began an investigation in 1999, provided services to the family, and that Charlie R. changed his lifestyle. While the circuit court acknowledged that the DHHR was satisfied with Charles R.'s modification of his behavior, the circuit court still ordered that Charlie R. not be permitted to supervise Serena and that Serena not be left alone in his presence. In this appeal, Billy D. argues that the order is insufficient to protect Serena and that Serena's visitation with Mary R. should be supervised. We agree.

Supervised visitation was ordered in this case following a hearing before the circuit court on October 1, 1999, where testimony was given concerning Billy D.'s allegation that there had been inappropriate sexual contact between Serena and her stepfather. Following the presentation of the evidence, the circuit court stated its finding as follows:

Now, this case is somewhat different in that, basically, the inappropriate sexual touching has been admitted although the degree and the intentions have been contested. Ms. [R.] has said that there was a touching twice and it could have only been twice—the—Mr. [D] has said that the child indicated that she had been—what would appear to be masturbating her step-father. But I believe it was the report from the interviewer in Pennsylvania from the Department of Social Services there who apparently has no interest or argument in this case at all and that interviewer reports that the child said that sometimes she liked playing with her step-father's penis and sometimes she didn't.

It seems at least in the opinion of the child this Court would have to find that it's more than an exploratory type of touching or an innocent touching. There's also the

allegation undenied by Mr. [R] that this has been going on for four (4) years or since the child was (2) years old.

Now, Mr. Skinner [7] has defended on the grounds that this is the lifestyle of the [R.'s]—nudity—and the Court will have to recognize that society has—has to accept different lifestyles because it's a free country, but we also have to accept that certain things are practically universally not accepted. And although nudity might be more acceptable in California than it is in Randolph County West Virginia certainly perhaps even in California the—a six (6) year old child playing with her step-father's penis would be considered to be inappropriate, and it's certainly considered inappropriate here in Randolph County, West Virginia. And I'm going to specifically find that there was inappropriate sexual contact between the six (6) year old child and her step-father's penis.

(Footnote added).

▮▮▮ Given the circuit court's finding, we are unable to affirm any order that allows Serena to have unsupervised visitation with her mother and stepfather. "In visitation as well as custody matters, we have traditionally held paramount the best interests of the child." Syllabus Point 5, *Carter v. Carter,* 196 W.Va. 239, 470 S.E.2d 193 (1996). In other words, "'"A court, in defining a parent's right to visitation, is charged with giving paramount consideration to the welfare of the child involved." Syl. Pt. 1, *Ledsome v. Ledsome,* 171 W.Va. 602, 301 S.E.2d 475 (1983).' Syl. Pt. 2, *Mary Jean H. v. Pamela Kay R.,* 198 W.Va. 690, 482 S.E.2d 675 (1996)." Syllabus Point 3, *Hawk v. Hawk,* 203 W.Va. 48, 506 S.E.2d 85 (1998). As we explained in *In the Interest of Carlita B.,* 185 W.Va. 613, 629, 408 S.E.2d 365, 381 (1991),

In the difficult balance which must be fashioned between the rights of the parent and the welfare of the child, we have con-

sistently emphasized that the paramount and controlling factor must be the child's welfare. "[A]ll parental rights in child custody matters," we have stressed, "are subordinate to the interests of the innocent child." *David M. [v. Margaret M.],* [182 W.Va. 57] at 60, 385 S.E.2d [912] at 916 [(1989)].

Having thoroughly reviewed the entire record in this case, we believe that it is in Serena's best interests to have supervised visitation with Mary R. Given the fact that inappropriate sexual contact occurred between Charlie R. and Serena, we believe that Charlie R. should have no visitation with Serena. Furthermore, considering Mary R.'s characterization of the events that occurred in 1999 as "childhood curiosity" and her testimony that it only happened twice despite evidence to the contrary, we are concerned about Mary R.'s ability to comply with an order requiring that Serena have no contact with Charlie R. In this instance, we find that supervised visitation is the only way to ensure that Serena's best interests will be protected. Accordingly, the final orders are reversed, and this case is remanded to the circuit court with directions to immediately remand this case to the family court for further proceedings to establish a new parenting plan whereby Mary R.'s visitation with Serena is supervised and Serena has no visitation or contact with Charlie R. whatsoever.[8]

## IV.

### CONCLUSION

Accordingly, for the reasons set forth above, the final orders of the Circuit Court of Randolph County entered on December 22, 2004, are reversed, and this case is remanded to the circuit court with directions to immediately remand the case to the Family Court of

---

7. Mr. Skinner was counsel for Mary R. at this hearing.

8. Billy D. also asserts error with regard to the part of the order that required him to meet Mary R. halfway between their residences to exchange custody during Serena's visits with Mary R. in West Virginia. Given the fact that our decision requires implementation of a revised parenting plan, we need not address this issue. For the same reason, we need not address Billy D.'s contention that additional provisions regarding Mary R.'s visits with Serena that were agreed to by the parties were not incorporated into the parenting plan.

Randolph County for further proceedings consistent with this opinion.

Reversed and Remanded with Directions.