# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**April 20, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**Aldona B.,**
**Respondent Below, Petitioner**

**vs)   Nos. 17-0130 and 17-0525** (Preston County 15-D-122)

**Nicholas S.,**
**Petitioner Below, Respondent**

## MEMORANDUM DECISION

In these consolidated cases, Petitioner Aldona B.,[1] pro se, appeals two orders of the Circuit Court of Preston County. In the first order, entered February 10, 2017, the circuit court denied petitioner's motion to stay a January 31, 2017, final order entered by the Family Court of Preston County allocating parenting time between the parties with regard to their minor child. In the second order, entered May 11, 2017, the circuit court affirmed the family court's January 31, 2017, final order. Respondent Nicholas S., pro se, filed a response in support of the circuit court's orders. Petitioner filed a reply.

The Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds that the appeal from the circuit court's February 10, 2017, order is moot and there is no substantial question of law and no prejudicial error with regard to the circuit court's affirmation of the family court's final order. For these reasons, a memorandum decision dismissing as moot the appeal in Supreme Court No. 17-0130 and affirming the circuit court's May 11, 2017, order in Supreme Court No. 17-0525 is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parties never married, but have a three-year-old child together. On May 14, 2015, the West Virginia Bureau of Child Support Enforcement ("BCSE") filed an action to establish the child's paternity at respondent's request. After the initial hearing, the BCSE no longer participated

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

in the case; however, the parties continued the litigation. Genetic testing confirmed that respondent is the father of petitioner's child.

Petitioner and the child have a very strong bond. Though respondent was present at the child's birth in December of 2014,[2] he has maintained only a limited relationship with the child since that time. According to the family court, "both parties have contributed to the limited relationship between [respondent] and the child, but as between the parties[, petitioner]'s actions in that regard have been far more significant." The family court found that petitioner "violated multiple orders providing [respondent] with unsupervised visits with the child." The family court concluded that "[t]he scope and extent of [petitioner]'s resistance to the efforts of this [c]ourt to establish a parenting plan for the parties' child and to allow [respondent] unsupervised time with the child is unprecedented in this [c]ourt's experience."

Prior to the January 18, 2017, final family court hearing, respondent had a combination of supervised and unsupervised visits with the child with significant gaps of time in between some visits. Respondent's last visit occurred on October 9, 2016, and was supervised by Home Base, Inc. ("Home Base") at their office in Preston County. Supervised visitation was utilized not because of any need to protect the child from respondent, but only to reassure petitioner as respondent gained more experience with the child and to provide respondent with additional help to ensure that visitation began on a solid footing. As explained by the family court, a parent having less than full competence is often the case when the parent has had only "limited opportunities to parent in any significant way" and "[t]here was nothing presented to the [c]ourt that might cause it to conclude [respondent] lacks the capacity to appropriately parent a child given the opportunity." The family court concluded that "[t]here is no reason that the [c]ourt might conclude that [respondent] has ever not loved the child or not wanted to be a part of the child's life."

The family court rejected petitioner's claim that respondent represented a danger to the child. The family court found that, despite petitioner's "efforts to [surreptitiously] record [respondent]'s interactions with the child," she failed to present any "evidence that [respondent] has ever actually harmed or attempted to harm the child" and that respondent has "no criminal history involving violence."[3] Moreover, there was also no evidence that respondent had been the subject of a petition for a protective order or otherwise faced allegations of domestic violence. Though petitioner alleged that respondent was abusive towards her, "the only convincing evidence presented of that involved the episodes when he would lose his temper and yell or swear at [petitioner] for interfering with his pursuit of a relationship with the child." The family court found that, even during those disturbing incidents, respondent "never once physically attacked [petitioner] in any fashion." Finally, "[t]here is no reason to believe [that respondent] has ever acted in an inappropriate sexual manner toward the parties' child or any child for that matter." The

---

[2]Respondent, a resident of Pennsylvania, traveled to Preston County for the child's birth.

[3]Petitioner introduced respondent's criminal record into evidence. Respondent's criminal record contained only minor offenses such as traffic violations and charges for disorderly conduct.

2

family court noted that, though respondent admitted to viewing pornography on the internet, "there was no evidence presented that [respondent had] an interest in child pornography."[4]

However, the family court noted that respondent was not "particularly helpful" in fostering a meaningful relationship between himself and the child because he acted "immature and irresponsible" on occasion. Most damaging to forming a bond with his child, respondent "appeared more focused on arguing with [petitioner] and other members of her family than fully exercising opportunities to spend time with the child." The family court concluded that respondent's efforts were "uneven and somewhat inconsistent," but that he "persisted overall when other parents probably would have just given up in the face of the other parent's opposition."

The Home Base worker who supervised two visits between the child and respondent and the two guardians ad litem ("GALs") appointed to represent the child's interests recommended that the development of a meaningful relationship with respondent was in the child's best interests. Notably, "[n]one of those objective witnesses believed [that] the child would be at risk of harm in [respondent]'s care."[5] Accordingly, the family court concluded that "it would be in the child's best interests for the child to have a meaningful and loving relationship with [respondent]."

Though the family court did not condone petitioner's efforts "to impede a meaningful relationship between [respondent] and the child," the court did not find those actions "a significant consideration" given the child's young age and strong bond with petitioner. Therefore, the family court concluded that it was not in the child's best interests to "disrupt the current relationship between [petitioner] and the child." The family court designated petitioner as having primary custodial responsibility for the child with "sole major decision-making authority" given the parties' dysfunctional relationship. With regard to the allocation of parenting time, the family court ruled as follows:

- Initially, respondent has weekly visitation with the child for two hours under the supervision of Home Base at their Preston County office. Completion of these four visits constitutes a prerequisite to respondent progressing to the next stage of visitation

- Respondent next has eight weekly visits with the child every Monday from 10:00 a.m. to 6:00 p.m. at the home of his mother. Respondent's mother is

[4]Respondent also testified that he uses marijuana recreationally, but stated that he does not smoke marijuana when he has parenting time with his child. The family court found respondent's statement sufficient given that there was no evidence that he had any substance abuse problem or addiction.

[5]The Clinical Law Program at the West Virginia University College of Law was appointed as the child's GAL. The case was assigned to two law students who served as the GALs under the supervision of a licensed attorney pursuant to Rule 10 of the West Virginia Rules for the Admission to the Practice of Law.

required to sign a note at the conclusion of each visit confirming that she was present. Completion of these eight visits under his mother's supervision constitutes a prerequisite to respondent progressing to the next stage of visitation

- After the completion of those eight visits, respondent's unsupervised visitation with the child occurs every Monday from 10:00 a.m. to 6:00 p.m. at any location respondent deems appropriate.

- Beginning August 1, 2017, respondent has overnight visitation with the child every week or, if respondent chooses, "something less than an every week visit" from Monday at 12:00 p.m. to Tuesday at 12:00 p.m. Respondent has to exercise his option for less frequent visitation in writing.

- Beginning January 1, 2018, respondent has overnight visitation with the child from Sunday at 12:00 p.m. to Tuesday at 12:00 p.m. When the child begins school, respondent's visitation will change to Friday at 6:00 p.m. to Sunday at 6:00 p.m. But, if the child is homeschooled, respondent's visitation remains on the Sunday to Tuesday schedule unless respondent chooses the Friday to Sunday schedule and provides petitioner notice of that choice in writing.[6]

The parties agree that the family court's parenting plan has not been implemented because of petitioner's refusal to abide by the parenting plan.[7] Petitioner filed a motion to stay the family court's final order which the court denied by order entered February 7, 2017. Petitioner then filed a motion to stay the family court's final order in the circuit court which denied the motion on February 10, 2017. In Supreme Court No. 17-0130, petitioner appealed the circuit court's order denying a stay of the final order on February 14, 2017. Also, in No. 17-0130, petitioner filed a motion to stay the final order in this Court which denied the motion by order entered March 10, 2017.

In the meantime, petitioner appealed the family court's final order to the circuit court. After holding oral argument on the appeal, the circuit court concurred with the family court's findings and affirmed its final order as the family court did not "abuse its discretion in the application of the law to the facts." In Supreme Court No. 17-0525, petitioner appealed the circuit court's May 11, 2017, order affirming the final order on June 12, 2017. By order entered February 15, 2018, this

---

[6]This is a summary of the family court's parenting plan with summer and holiday visitation not shown.

[7]In a July 5, 2017, order, the family court found petitioner in contempt of its January 31, 2017, final order. The family court's finding of contempt was subsequently affirmed by the circuit court. Petitioner is appealing the circuit court's affirmation of this ruling in a separate appeal before this Court, Supreme Court No. 17-0914.

4

Court, on its own motion, consolidated Supreme Court Nos. 17-0130 and 17-0525 for consideration and decision.[8]

We review this family law matter under the following standard:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004).

On appeal, petitioner raises a multitude of objections to the family court's final order. Respondent counters that petitioner's objections are without merit. We agree with respondent. Like the circuit court, we discuss only those of petitioner's arguments that could conceivably have merit. We summarily reject all other arguments as wholly without merit.

### Due Process

Petitioner argues that she was denied due process of law in the family court because that court denied her motion to dismiss respondent's petition for a parenting plan and because she did not have notice and an opportunity to be heard regarding the persons appointed to supervise respondent's visitation during the first two stages of the court's parenting plan. We address petitioner's arguments in turn.

Due process of law requires that an adjudication of rights "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *State ex rel. Peck v. Goshorn*, 162 W.Va. 420, 422, 249 S.E.2d 765, 766 (1978) (quoting *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 313 (1950)). With regard to the first issue, petitioner asserts that, through most of the litigation, she did not have notice that respondent wanted parenting time with the parties' child, but only that the family court "did not want" her to be the primary custodial parent.[9] We find

---

[8]We find that the circuit court's February 10, 2017, order denying petitioner's motion to stay became appealable when petitioner subsequently filed her appeal from the circuit court's May 11, 2017, order affirming the family court's final order. *See Riffe v. Armstrong*, 197 W.Va. 626, 637, 477 S.E.2d 535, 546 (1996) (finding that "if an appeal is taken from what is indeed the last order disposing of the last of all claims as to the last of all parties, then the appeal brings with it all prior orders"), *modified on other grounds*, *Moats v. Preston County Comm'n*, 206 W.Va. 8, 521 S.E.2d 180 (1999).

[9]Both the family court and circuit court noted that petitioner filed an ethics complaint against the family court judge and reported his "illegal actions" to law enforcement officials. In its recitation of the case's procedural history, the family court noted that petitioner's complaints (Continued . . .)

that the record belies this contention. Stripped of its due process façade, petitioner's argument is that respondent should not be allocated parenting time simply because his petition contained procedural errors. The family court rejected this argument, finding that petitioner was not prejudiced as respondent's "proposed parenting plan . . . essentially tracked the [s]upreme [c]ourt's form parenting plan in substantive content and for the most part in form." We concur and find that petitioner did not suffer prejudice from any alleged procedural deficiency in respondent's petition for a parenting plan. Therefore, we conclude that there was no error in the denial of petitioner's motion to dismiss on this ground.

As to petitioner's argument that she was denied her due process of law. In *Weber v. Weber*, 193 W.Va. 551, 554, 457 S.E.2d 488, 491 (1995), we found that, when supervised visitation is ordered, the family court "must give the parties a fair opportunity to be heard on the proposed visitation supervisors." Here, both the Home Base worker and respondent's mother testified at the January 18, 2017, final hearing. During petitioner's cross-examination of the Home Base worker, she elicited testimony that most of the worker's expertise in supervising visitation came from her prior experience in performing that service. During respondent's mother's testimony, it was revealed that respondent's mother might have been the subject of a mutual restraining order as part of her own divorce proceedings. Regarding proposed visitation going forward, respondent's mother testified that she would be willing to supervise his visitation with the child. Both GALs testified that, given the lapse of time since respondent's last visit with the child, his initial visitation pursuant to the parenting plan should be supervised by Home Base. Based upon our review of the record, including the video recording of the January 18, 2017, final hearing, we conclude that petitioner had both notice and an opportunity to be heard regarding the persons who were appointed as visitation supervisors and find no merit in her argument in this regard.

Petitioner further contends that she was denied due process of law because the circuit court ruled that her motion to strike respondent's response to her petition for appeal was "a moot point." In affirming the family court's final order, the circuit court found that, though respondent failed to serve his response on petitioner, Rule 28 of the West Virginia Rules of Practice and Procedure for Family Court ("family court rules") did not require that a response be filed. Accordingly, the circuit court found that respondent's failure to serve his response on petitioner did not prevent the court from holding oral argument on her appeal or infringe on petitioner's due process rights. We agree with the circuit court. Rule 28(g) provides that an appellant has no right to reply to a response and Rule 33(b) of the family court rules clearly permits the appellee, as well as the appellant, to participate in oral argument. Accordingly, we find that petitioner's contention that the lower courts denied her due process of law has no merit.

<u>The exclusion of certain affidavits as hearsay</u>

Petitioner argues that affidavits by certain persons who witnessed incidents that occurred during respondent's visitation were admissible under the residual exception to the rule against

"were all eventually to be found without any merit." In affirming the family court's final order, the circuit court found that the family court's inclusion of this information in its procedural history was neither improper nor prejudicial toward petitioner. We concur.

6

hearsay. Rule 807(a) of the West Virginia Rules of Evidence provides, in pertinent part, as follows:

> (a) *In General.* Under the following circumstances, a hearsay statement is not excluded by the rule against hearsay even if the statement is not specifically covered by a hearsay exception in Rule 803 or 804:
> (b) the statement has equivalent circumstantial guarantees of trustworthiness;
> (c) it is offered as evidence of a material fact;
> (d) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts; and
> (e) admitting it will best serve the purposes of these rules and the interests of justice.

In syllabus point one of *McDougal v. McCammon*, 193 W.Va. 229, 455 S.E.2d 788 (1995), we held that, under the Rules of Evidence, we generally review evidentiary rulings only for an abuse of discretion.

Here, based on our review of the record, we concur with the circuit court's determination that the family court did not abuse its discretion in finding that the proffered affidavits were inadmissible as hearsay. First, we find that the affidavits do not have guarantees of trustworthiness. In addition to describing what they observed in their affidavits, the affiants offered their perceptions of the incidents between the parties. As the family court explained at the January 18, 2017, final hearing, respondent did not have the opportunity to cross-examine any of the affiants. Furthermore, while petitioner offers the affidavits as evidence of material facts, they are not more probative of evidence that is already in the record. At the final hearing, the parties stipulated to the admission of a set of exhibits that included petitioner's audio and video recordings of respondent's visits with the child. Moreover, each party testified as to incidents that occurred during respondent's visitation and were subjected to cross-examination regarding these incidents. Accordingly, we conclude that the admission of the proffered affidavits would have served neither the purposes of the Rules nor the interests of justice and were properly excluded.

Respondent's parenting time

Petitioner argues that respondent should be allocated no parenting time with their child. Initially, petitioner contends that the family court failed to recognize her status as the child's primary caretaker. "Although parents have substantial rights that must be protected, the primary goal in cases involving . . . family law matters . . . must be the health and welfare of the children." Syl. Pt. 3, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996); *see also Michael K .T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) (finding that "the best interests of the child is the polar star by which decisions must be made which affect children."). Here, the family court designated petitioner as having primary custodial responsibility for the child with sole major decision-making authority. The family court made this designation in recognition of the child's young age and strong bond with petitioner and in spite of petitioner's efforts "to impede a meaningful relationship between [respondent] and the child." Though the family court did not condone petitioner's resistance to the court's efforts to establish a parenting plan and to allow

7

respondent unsupervised visitation, it found that her recalcitrance was not a significant consideration in the allocation of parenting time given the unique facts and circumstances of this case. Upon our review of the record, we determine that the family court's findings and rulings clearly recognized petitioner as the child's primary caretaker.[10]

Next, petitioner argues that respondent abandoned the child for the first nine months of her life. West Virginia Code § 49-1-201 defines "abandonment" as "any conduct that demonstrates the settled purpose to forego the duties and parental responsibilities to the child." West Virginia Code § 48-22-306(b) provides as follows:

> Abandonment of a child under the age of six months shall be presumed when the birth father:
> (1) Denounces the child's paternity any time after conception;
> (2) Fails to contribute within his means toward the expense of the prenatal and postnatal care of the mother and the postnatal care of the child;
> (3) Fails to financially support the child within father's means; and
> (4) Fails to visit the child when he knows where the child resides[.]

The family court rejected petitioner's claim that respondent abandoned the child given the parties' disputes as to whether respondent made reasonable offers to financially contribute to the child's welfare and whether petitioner gave him reasonable opportunities to visit the child during the first nine months of the child's life. Moreover, the BSCE filed the instant action at respondent's request so that the child's paternity could be established on May 14, 2015, which was under six months after the child's birth. Therefore, based on our review of the record, we decline to disturb the family court's finding that petitioner failed to show that respondent abandoned the child. *See State v. Guthrie*, 194 W.Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) (finding that "[a]n appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact").

Next, petitioner objects to the allocation of parenting time to respondent based on West Virginia Code § 48-9-206(c), which provides that, when a parent's pattern of caretaking is not sufficiently established, the family court "shall allocate custodial responsibility based on the child's best interest." In this case, it is undisputed that respondent has had only a limited relationship with the child. The family court concluded that "it would be in the child's best interests for the child to have a meaningful and loving relationship with [respondent]" based on the

---

[10]Petitioner objects to the family court's direction that she consult with respondent and notify him of her decisions. We find that the requirement to consult with and notify respondent of major decisions regarding the child does not contradict the family court's ruling that petitioner has sole major decision-making authority. For example, respondent raised the issue of the child not being fully vaccinated at the final hearing. The family court noted that petitioner was "reluctant to have the child receive the full array of medically[-]recommended vaccinations," but found that her decision was "a reasonable exercise of her major decision-making authority at this time."

8

recommendations of the Home Base worker who supervised two visits between the child and respondent and the two GALs appointed to represent the child's interests. Based on our review of the record,[11] we conclude that the family court did not err in allocating parenting time pursuant to West Virginia Code § 48-9-206(c) based on the finding that it was in the child's best interests.

Petitioner further argues that the family court failed to comply with West Virginia Code § 48-9-206(c)'s requirement that the court consider the factors "that are set forth in [West Virginia Code §§ 48-9-206(a), 48-9-209, and 48-9-403(d)]." We find that West Virginia Code § 48-9-403(d) does not apply to this case because it addresses the relocation of a parent and that West Virginia Code § 48-9-209 does not apply because respondent has not committed any of the acts listed therein such as abandonment, domestic violence, child abuse or neglect, or sexual assault or abuse.

With regard to the factors set forth in West Virginia Code § 48-9-206(a), we find the following factors are applicable to this case: (1) whether the child is permitted to have a relationship with each parent who has performed a reasonable share of parenting functions; (2) whether the child would be harmed because of a gross disparity in the quality of the emotional attachments between each parent and the child or in each parent's demonstrated ability or availability to meet a child's needs; (3) whether the allocation of parenting time is appropriate given the child's developmental age; and (4) whether the allocation of custodial responsibility would be extremely impractical or interfere with the child's need for stability in light of economic, physical or other circumstances including ". . . the ability of the parents to cooperate[.]" We find that the family court considered the first three factors by giving petitioner primary custodial responsibility because of the child's young age and strong bond with petitioner and that the court considered the fourth factor by vesting petitioner with sole major decision-making authority given the parties' dysfunctional relationship. Therefore, we reject petitioner's argument that the family court failed to consider relevant factors as required by West Virginia Code § 48-9-206(c).

Finally, petitioner objects to respondent having any unsupervised or overnight visitation with the parties' child. We find that the record is devoid of any evidence that supports petitioner's objection. The family court's utilization of supervised visitation is not because of any need to protect the child from respondent, but to reassure petitioner as respondent gains more experience with the child and to provide respondent with additional help to ensure that visitation begins on a solid footing. As explained by the family court, a parent having less than full competence is often the case when the parent has had only "limited opportunities to parent in any significant way" and "[t]here was nothing presented to the [c]ourt that might cause it to conclude [respondent] lacks the capacity to appropriately parent a child given the opportunity." Under the family court's final order, respondent will not progress to the visitation being supervised by his mother until he successfully completes the visits supervised by Home Base. Then, respondent will not progress to unsupervised and (eventually) overnight visits until he successfully completes the visits

---

[11]The recommendation of Dr. Keith L. Rieder, a psychologist, is also in the record. Petitioner explains that she "engaged Dr. Rieder for a psychological evaluation of herself and her relationship with [the parties' child]" given their dispute regarding parenting time.

supervised by his mother. Respondent's mother is required to sign a note at the conclusion of each of those visits confirming that she was present. Therefore, we find that the family court put in place adequate safeguards that allow only a step-by-step increase in respondent's visitation so that respondent and the child attain familiarity with each other gradually rather than a more abrupt change in the young child's current situation. Based on our review of the record, we conclude that the family court did not err in the allocation of parenting time between the parties as it is in the child's best interests.

For the foregoing reasons, we affirm the circuit court's May 11, 2017, order upholding the family court's January 31, 2017, final order allocating parenting time between the parties with regard to their minor child in Supreme Court No. 17-0525.[12] Given that the family court's final order is affirmed, we find that petitioner's appeal of the circuit court's February 10, 2017, denying her request to stay the final order is now moot. Therefore, we dismiss as moot the appeal in Supreme Court No. 17-0130.

No. 17-0130, Dismissed as Moot.
No. 17-0525, Affirmed.

**ISSUED:**  April 20, 2018

**CONCURRED IN BY:**

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker

---

[12]The family court also denied petitioner's motion to hold respondent in contempt for non-payment of child support in the January 31, 2017, final order. In an earlier order, entered October 20, 2016, the family court resolved outstanding support issues including back child support and birth expenses. Accordingly, the entry of the October 20, 2016, order resulted in respondent having a significant child support arrearage. Therefore, we find that the family court did not abuse its discretion in denying petitioner's motion for contempt because there was "no reason to believe [respondent] had the ability to become fully current in his support obligation in the few months following the October 20, 2016, order." *See* Syl. Pt. 1, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) (holding that an abuse of discretion applies to contempt rulings).